**Virginia Hansen VINCENT,
Petitioner,**

v.

**COMMISSIONER OF INTERNAL
REVENUE, Respondent.**

**No. 13649.**

United States Court of Appeals,
Ninth Circuit.

Jan. 11, 1955.

Kent & Brookes, Valentine Brookes, Arthur H. Kent, Paul E. Anderson, San Francisco, Cal., for petitioner.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson, George F. Lynch, Loring M. Post, Sp. Asst. to Atty. Gen., Charles W. Davis, Chief Counsel, Int. Rev. Service, Washington, D. C., for respondent.

Before HEALY and FEE, Circuit Judges, and WIIG, District Judge.

JAMES ALGER FEE, Circuit Judge.

Petitioner was born in 1916, the daughter of Oscar and Fay Hansen. The parents separated in 1920, and petitioner left California, where all had previously lived, and went with her mother to Michigan. The parents were finally divorced in 1923, and her mother subsequently remarried. Her father, who resided after the separation with his mother, Josephine Hansen, was president, manager and member of the Board of Directors of Bear Film Company, a California corporation. As owner of all the outstanding shares of stock of Bear, he transferred these to Josephine in trust for himself as beneficiary. At his death, petitioner became his sole heir. Josephine, who was appointed a co-administratrix of Oscar's estate, filed an inventory of assets which included no mention of the stock of Bear. In 1930, the other assets of Oscar's estate, of a value of about $10,000.00, were distributed to petitioner.

In order to obtain the services of Albert Hansen, another son, as manager of Bear, Josephine transferred to him all the stock which she had received in trust from Oscar. Josephine died in 1932. Albert operated the business of Bear successfully until his death in 1940. While he was in control, Bear declared and paid dividends of $61,000.00 to Albert and his estate. By trusts inter vivos and established by will, Albert disposed of the Bear stock for the benefit of members of his immediate family, but made no provision for Charles Hansen, another brother, or for petitioner.

Charles had a dispute with the estate of Albert, during which petitioner learned of her right in the Bear stock for the first time. She filed a claim with the estate of Albert and, upon rejection thereof, brought suit against Bear, the holders of record of the stock and others. She was eventually successful, and her judgment was affirmed. She recovered the stock, the intervening dividends and interest. Hansen v. Bear Film Co., 28 Cal.2d 154, 168 P.2d 946.

In order to obtain vital evidence, she had made an agreement for compensation with her cousins, Elizabeth and Carl Hansen. In 1946, in settlement thereof, she assigned to them 1,375 shares of Bear of value of $84,107.54 and paid her attorneys $90,338.04 in cash as attorney fees and expenses of this litigation. On her income tax return for that year, where she claimed these as deductions and omitted $61,000.00, the Commissioner filed a deficiency. The Tax Court required the addition of the last amount, and allowed her $50,345.00 only as a deduction.

The decision of the Court deals with the matter as though there were an aggregate of several claims, and deals with these seriatim as paraphrased below. The Tax Court says as to "Issue 1," the object of her suit was to establish title to the stock in Oscar Hansen and then in herself, and was not for the collection of income, and that, therefore, a portion of costs are not deductible under Section 23(a) (2), 26 U.S.C.A. § 23(a) (2), but must be capitalized; as to "Issue 2," the $61,000.00 is taxable income under Section 22(b) (5), 26 U.S.C.A. § 22(b) (5), and does not represent damages to petitioner; as to "Issue 3," the argument of the petitioner that the entire expense of the litigation constitutes a loss under Section 23(e) (3) is wrong, because there was no basis for holding that the property was stolen or embezzled by Josephine Hansen or her successor trustee.

Actually, there is only one problem which includes all these three phases. Josephine Hansen held this property upon an express trust. Albert Hansen received transfer from Josephine Hansen, and, by knowledge and by paying no consideration, he was also charged with the express trust. His trust was not ex maleficio or resulting trust. Petitioner was the cestui que trust after the death of Oscar Hansen. When Albert Hansen received the $61,000.00 dividend, he, as trustee, was liable for the income taxes for the trust estate. If he did not pay, the tax cannot be collected now from the beneficiary.

But it is said he claimed title to the income. Between them, the proof is clear. Josephine and Albert were guilty of theft of the Bear stock and dividends which are clearly shown to be the property of petitioner. The Tax Court gives two fatuous reasons for the denial of the exemption:

> 1. "We cannot impute to them the commission of a crime. * * Both Josephine and Albert Hansen were dead at the time of the trial of petitioner's suit * * *."

It is assumed this is on the strength of the maxim, "De mortuis nil nisi bonum," that nothing but good should be spoken of the dead.

> 2. "* * * in the petitioner's suit no issue involving theft or embezzlement was pleaded, tried or proved and no finding or conclusion of law was made by the Superior Court on such issue."

Of course, it was not necessary there to prove the matter or to draw the conclusion. But here it is vital to a decision, and responsibility cannot be so evaded. It was not necessary that criminal proceedings be brought against Josephine or Albert as a condition precedent to making claim on the theory of loss by theft here.

The findings of the Superior Court admit of no other conclusion. The facts are set forth. Under the statute law of the State of California and under the decisions of its courts, this property was lost to petitioner by "theft."[1] Therefore, she is brought within the exact terms of the federal enactment. The law does not intimate that theft must be established by a criminal sentence or that the thief be alive when the deduction is claimed. It was the plain purpose of the enactment that collateral loss by theft need not be capitalized as part of the purchase price of the property. A grave injustice would have been perpetrated were it required to be done here. But the point is that the attempt runs in the teeth of plain language of the law.

This Court accepts the finding that the major purpose of petitioner's suit against Bear and the estate of Albert was to establish that she was the owner of the property and entitled to have it transferred to her by the defaulting trustees. But that does not affect the situation.[2] Otherwise, if a thief is bold enough to claim title, he prevents his victim from obtaining relief under an express federal statute.

The $61,000.00 was income which was lost by application in the "theft" by Albert. When this was restored after having been embezzled by an express trustee, it came in at the same gate. It was property lost by theft. The mere fact that, to save a multiplicity of suits, the $61,000.00 found due Albert from Bear was not required to be paid and that Albert was not required to repay petitioner the $61,000.00 which he stole from her, but that Bear would pay this sum directly to petitioner, is immaterial. This procedural shortcut assured petitioner of the money but did not affect the fact that it was a payment by a defaulting trustee of money stolen from the trust estate.

Now, if the realities of the situation had been visualized, petitioner should not be deprived of her favorable position taxwise simply because the fiduciaries of the trust estate proved false. Albert, as trustee, should have paid income tax for the estate upon the $61,000.00. Likewise, the trustee, Albert or Josephine, or Josephine, as administratrix, was under duty to pursue these assets and restore them to the trust estate. Under appropriate proceedings, a substitute trustee could have been appointed for the estate. If so, the estate or rather the

---

[1] "Every person * * * who shall fraudulently appropriate property which has been entrusted to him * * * is guilty of theft * * *." California Penal Code, § 484.

[2] See our recent opinion, Shipp v. Commissioner of Internal Revenue, 9 Cir., 217 F.2d 401, for the situation where this principle is applicable.

fiduciary, could have covered all the collateral losses such as expense of obtaining evidence, attorney fees and costs under Section 23(a) (2).

The petitioner should not be required to declare the $61,000.00, because it was received by a faithless trustee, nor yet be denied the deduction of the incidental costs of recovery, which either of the successive trustees could have obtained for the estate if he had incurred the expenses involved here. Of course, it is perfectly obvious that petitioner in the state court recovered the legal title of the stock in the right of the fiduciary, and that thereafter, in recognition of her equitable right, the legal title was conveyed to her. The opinions of the courts show this shorthand was involved.

Although petitioner makes a persuasive argument for her right to deduction under this section, it is not here decided that it is allowable. But the rationale of these considerations and decisions carries over to an examination of whether she is entitled to deduct "losses sustained during the taxable year" of 1946 "not compensated for by insurance" "of property not connected with the trade or business * * * from theft." Here the circumstance that the legal title was in Albert or Josephine as fiduciary was of great importance in the whole problem. The trust was an express trust. The embezzlement was a factor because the legal title was in the name of the fiduciary. But the California law defines such taking as "theft." It is found that there was no basis for the so-called "claim of right." There was not in Josephine or Albert any "color of title" such as it is denominated in real property law. Therefore, this type action does not fall within the idea of defending or perfecting title to property. There was never any question of the title to the property. When the circumstances of the trust and the appropriation of the property are taken into consideration, the application of this section of the statute is apparent.

The only other question is whether the collateral expenses such as those here claimed can be deducted. These are not losses of the property itself, because that has been recovered. However, it seems clear that the costs of recovery are losses of property from theft. In any event, considering the situation of petitioner as cestui que trust of an estate, the fiduciaries of which did not protect the corpus, but robbed her of the whole, it falls well within the reason of the rule, considering the deductions which a fiduciary himself may make. The cases in any event have allowed collateral losses as deductions under this section.

The judgment is reversed and all claimed deductions allowed.