315 F.2d 762
 63-1 USTC P 9391
 Calvin Pardee ERDMAN, Estate of Eleanor D. Erdman, Deceased,
Calvin Pardee Erdman, Calvin Pardee Erdman, Jr.,
Executors, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 No. 13924.
 United States Court of Appeals Seventh Circuit.
 April 3, 1963.
 
 John E. McClure, Washington, D.C., John P. McClure, Washington, D.C., of counsel, for petitioners.
 Louis F. Oberdorfer, Asst. Atty. Gen., Tax Div., Phillip Heymann, Lee A. Jackson, L. W. Post, Arthur E. Strout, Attys., Dept. of Justice, Washington, D.C., for respondent.
 Before SCHNACKENBERG, CASTLE and SWYGERT, Circuit Judges.
 SWYGERT, Circuit Judge.
 
 
 1
 Petitioners, Calvin Pardee Erdman, personally, Calvin Pardee Erdman, and Calvin Pardee Erdman, Jr., executors of the estate of Eleanor D. Erdman, deceased, seek a review of a decision of the Tax Court of the United States determining a deficiency in federal income tax of petitioners for the calendar year 1953 in the amount of $6,377.65.
 
 
 2
 We think there is no need to restate in detail the facts (about which there is no dispute) because they are fully set forth in the Tax Court's decision at 37 T.C. No. 113. Only to place the problem in its proper setting shall we attempt an abbreviated summary of those facts essential to our decision.
 
 
 3
 Reuben H. Donnelley, the taxpayer's father, died in 1929. Article Six of his will created a trust totaling $500,000; the entire income was to go to his sister, Naomi, for life, if she survived her mother (which she did); and on Naomi's death the corpus was to go to whomever she should appoint by will, and in default of appointment to the taxpayer, Eleanor Erdman, nee Donnelley,[1] and Thorne Donnelley, children of Reuben, equally. Naomi released her power of appointment in 1942, and died in 1951.
 
 
 4
 The terms of the Article Six trust did not specifically provide for distribution of the corpus if the power of appointment was released, and the trustees thereunder instigated a suit to determine who was entitled to the property-- the trustees of two residuary trusts[2] under Article Fifteen of Reuben's will, or Thorne and Eleanor.
 
 
 5
 The Circuit Court of Cook County held that the taxpayer and Thorne Donnelley, her brother, were entitled to the corpus; but when the trustees of the residuary trusts indicated they intended to appeal, the case was settled; the taxpayer and her brother divided sixty-five percent of the corpus and accumulated trust income, and the remainder went to the residuary trusts. The Illinois court directed that all expenses of the litigation, including attorney fees (amounting to a total of $60,020), be paid from the corpus of the trust before distribution.
 
 
 6
 Of the $60,020, allowed for expenses, $25,005 was allowed to Thorne and the taxpayer to pay the attorneys who represented them. All of the attorneys were paid by the trustee from the trust fund.
 
 
 7
 The trustee did not take a deduction for any of the expenses of the litigation over the disposition of the Article Six trust. On the joint federal tax return filed by the taxpayer and her husband for the year 1953, however, a deduction of $20,000 was taken for attorney fees in the trust litigation.
 
 
 8
 The Tax Court upheld the Commissioner's determination that Eleanor and her husband, Calvin Pardee Erdman, were not entitled to the claimed deduction, nor any deduction for attorney fees in the Circuit Court action, and alternately the Tax Court refused to recognize petitioners' contention that the trust was entitled to deduct the expenses and that therefore, taxpayer need not treat certain payments from the trust as taxable income.
 
 
 9
 We agree with the Tax Court.
 
 
 10
 The suit brought by the trustee of the Article Six trust in which Thorne Donnelley and the taxpayer were made parties defendant was a suit in which petitioners sought to (and to a degree did) defend and perfect their title to property as beneficiaries under a testamentary trust. As such, their expenses toward this end are not deductible. Kelly v. Commissioner, 228 F.2d 512 (7th Cir., 1956). We are not impressed with petitioners' argument that, for all practical purposes, taxpayer and her brother were owners of the funds in dispute even if the Circuit Court of Cook County had determined-- which it did not-- that the trustees under the residuary trusts were entitled to those funds. They base this argument on the fact that the actuarial possibility of taxpayer's dying leaving at least one lawful descendant (which would have given her the right to appoint by will or to have the property pass interstate to her husband and descendants) was 9,991 out of 10,000. In spite of this statistical argument, we believe that, at the time of the Circuit Court suit, any possibility that Eleanor was not the absolute owner of the funds should the Circuit Court have awarded them to the trustees, made her title insecure, and expenditures to perfect that title were capital in nature, and hence not deductible. It is undisputed that there was an ambiguity in the will and that resort to the Circuit Court was proper.
 
 
 11
 In the alternative, it is elementary that a taxpayer may not take a deduction for expenses of management, conservation, or maintenance of property held for the production of income unless such expenses are the expenses of the taxpayer and paid or incurred by him. Anderson v. Wilson, 289 U.S. 20, 27, 53 S.Ct. 417, 77 L.Ed. 1004 (1933). Here, the Circuit Court ordered the attorneys' fees and costs to be paid out of the principal of the trust. Nowhere does the order specify that the lawyers themselves were to be paid by the trustee, but we note that the trustee did make the payments.
 
 
 12
 Under Illinois law legal fees incurred in litigation over trust property may be paid out of the principal of the trust. Illinois Revised Statutes, c. 30, Sec. 172(2). The Circuit Court of Cook County so ordered and the expenses thereby became chargeable to the trust-- a separate legal, taxable entity-- and payable by it. Anderson v. Wilson, supra at 27, 53 S.Ct. at 420. Hence, the expenditures were expenditures of the trust, payable out of trust principal, and not expenditures of the taxpayer paid by her.
 
 
 13
 As an alternative contention, petitioners claim that even if we hold that the legal fees were, in contemplation of law, those of the trust, such fees were an expense in the administration of the trust for federal income tax purposes and as such were deductible by the trust. Int.Rev.Code of 1939, 23(a)(2). They assert that, if this contention is sound, then the trust had no distributable net income for 1953, hence the petitioners were in error in reporting $3,170.49 received from the trust as income.
 
 
 14
 We believe their alternative contention is unsound. As stated by the Tax Court:
 
 
 15
 '* * * Section 162(b) of the Internal Revenue Code of 1939, as amended by the Revenue Act of 1942, provides, in part, as follows: "(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or beneficiaries whether distributed to them or not. As used in this subsection, 'income which is to be distributed currently' includes income for the taxable year of the estate or trust which, within the taxable year, becomes payable to the legatee, heir, or beneficiary. * * *' 'The word 'income' in the phrase 'amount of the income * * * which is to be distributed currently' means probate income, that is, the income of the trust under applicable local law and the governing instrument. Augusta Bliss Reese, 30 B.T.A. 1 (1934); Gertrude Libbey Anthony, 9 T.C. 956 (1947); United States v. Merrill, 211 F.2d 297 (C.A.9, 1954), note 3 at page 300. Here, the Illinois court ordered the fees paid from principal and that order has not been reversed. That decree is conclusive as to matters regarding the distribution of the trust property. Augusta Bliss Reese, supra. Since the payment of these fees was made a charge upon the principal of the trust, it did not reduce the probate income of the trust distributable to the beneficiaries and includable in their income for Federal Income tax purposes.'
 
 
 16
 The decision of the Tax Court is affirmed.
 
 
 
 [1]
 Eleanor D. Erdman died December 30, 1959. For convenience, Eleanor is referred to throughout this opinion as the taxpayer, although her interest is represented by the executors of her estate
 
 
 [2]
 In Article Fifteen of his will Reuben provided that the remainder of his estate after the payment of debts and specific legacies should be divided into two trusts, one primarily for the benefit of his son Thorne Donnelley and his issue and the other primarily for the benefit of Eleanor and her issue. Under the provision for Eleanor, if she were living (as she was at the time of the separation of the residue into two trusts), she would receive the income from her share for her life. If she left descendants at her death, the principal of her trust fund was to go to whomever she directed in her will. There was a gift provided in default of appointment. If Eleanor left no issue at her death, the principal was to become a part of the trust fund established for her brother. The provisions of the trust established for Thorne Donnelley were similar. Articles Sixteen and Seventeen of the will disposed of the property in the event neither Thorne nor Eleanor left issue upon their deaths