Harrison E. SPANGLER and Myrtle B. Spangler, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 18178, 18179.

United States Court of Appeals
Ninth Circuit.

Oct. 16, 1963.

David S. Pattullo and H. Myron Gleason, Portland, Or., for petitioners.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks and Earl J. Silbert, Attorneys, Department of Justice, Washington, D. C., for respondents.

Before JERTBERG and BROWNING, Circuit Judges, and JAMESON, District Judge.

BROWNING, Circuit Judge.

Taxpayer [1] seeks reversal of a decision of the Tax Court.

The facts are stipulated. The managing officers and controlling stockholders of a corporation induced taxpayer to sell her stock to them by fraud. Taxpayer brought suit and recovered judgment against the wrongdoers. Barnes v. Eastern & Western Lumber Co., 205 Or. 553, 287 P.2d 929 (1955). The judgment was composed of three elements: (1) an amount equal to quarterly dividends issued on taxpayer's stock after the fraudulent sale; (2) an amount equal to a liquidating payment issued on her stock less the consideration received by taxpayer in the fraudulent sale; (3) interest on each quarterly dividend and the net liquidating payment from dates of issuance. Taxpayer collected only a portion of the judgment, in part by settlement and in part by execution.

The Tax Court held that the amount collected was to be allocated among the three elements of the judgment in accordance with the ratio between each of the elements and their sum. The Tax Court further held that the portion of the recovery allocated to the net liquidating payment was taxable as recovery of capital, and the portions allocated to dividends and interest were taxable as ordinary income. Taxpayer's litigation expenses were allocated between capital expenditure and non-business expense deductible from ordinary income in accordance with the ratio which recovery

1. The reference is to petitioner Myrtle B. Spangler; Harrison E. Spangler is a par-ty only because he and his wife filed joint returns.

of capital and ordinary income bore to the total recovery.

## I

Taxpayer contends that the amount collected on the judgment should be applied first to the principal-elements of the judgment and only thereafter to the interest-element.

The ordinary rule requires that undesignated *partial* payments be applied first to interest.[2] However, the Tax Court held that proration between principal and interest was proper where (as here) the amount collected was not a partial payment on the judgment, but a lump sum settlement of the entire obligation of one defendant and all that could be collected from the remaining defendants. We agree;[3] and we also agree with the Tax Court that neither authority nor fairness support taxpayer's argument for the total inversion of the ordinary rule.

## II

Taxpayer contends that the entire amount collected on the judgment should be taxed as return of capital.

In determining whether receipts are taxable as ordinary income or return of capital it is immaterial whether taxpayer effected collection amicably or by resolving a dispute through compromise or litigation. It is the nature of the underlying claim that controls and not the manner of collection.[4]

The sums labeled "interest" in the present judgment were awarded in lieu of ordinary income taxpayer would have earned on the sums wrongfully withheld had they been paid when due. The amounts realized by taxpayer on the portion of the judgment attributable to them are therefore taxable as ordinary income.[5]

Taxpayer argues that the quarterly "dividends" paid after the fraudulent sale but before the final payment in liquidation represented cash obtained by sale of corporate assets as part of the process of liquidation, and that the portion of the judgment awarded as a substitute for these payments was therefore a return of capital.[6] Taxpayer had the burden of establishing that the payments

2. 1 Mertens, Federal Income Taxation, § 6A.01 (rev. 1962).

3. See also Specialty Eng'r Co., 12 T.C. 1173 (1949); William Justin Petit, 8 T.C. 228, 235–236 (1947).

4. The leading case is United States v. Safety Car Heating & Lighting Co., 297 U.S. 88, 98, 56 S.Ct. 353, 80 L.Ed. 500 (1936). Authorities are collected in Sanders v. Commissioner, 225 F.2d 629, 635 (10th Cir., 1955). See also Commissioner v. Murdoch, 318 F.2d 414, 416–417 (3d Cir., 1963); Sager Glove Corp. v. Commissioner, 311 F.2d 210, 211 (7th Cir., 1962); Carter's Estate v. Commissioner, 298 F.2d 192, 194 (8th Cir., 1962); Cotnam v. Commissioner, 263 F.2d 119, 121–122 (5th Cir., 1959); Jones v. Corbyn, 186 F.2d 450, 453 (10th Cir., 1950); Raytheon Prod. Corp. v. Commissioner, 144 F.2d 110, 113–114 (1st Cir., 1944); Arcadia Ref. Co. v. Commissioner, 118 F.2d 1010, 1011 (5th Cir., 1941); H. Liebes & Co. v. Commissioner, 90 F.2d 932, 935 (9th Cir., 1937); 1 Mertens, Federal Income Taxation, §§ 5.06, 6A.12 (rev. 1962).

With exceptions not here pertinent, the recovery is taxable in the year of receipt. It has been persuasively argued that an unfair burden is imposed on the innocent taxpayer when this results in "bunching" income which, but for the wrong of defendant, would have been spread over a number of years and therefore taxed at a lower rate. Cutler, Taxation of the Proceeds of Litigation, 57 Colum.L.Rev. 470 (1957). It is not suggested, however, that this is a wrong which the court can correct when determining plaintiff's tax liability.

5. Kieselbach v. Commissioner, 317 U.S. 399, 403–405, 64 S.Ct. 41, 87 L.Ed. 497 (1943); Filippini v. United States, 318 F.2d 841, 844 n. 2 (9th Cir., 1963), affirming 200 F.Supp. 286, 289 (N.D.Cal. 1963); Commissioner v. Goldberg's Estate, 213 F.2d 78, 83 (3d Cir., 1954); Helvering v. Stornfeltz, 142 F.2d 982, 984 (8th Cir., 1944); Nichol v. United States, 48 F.Supp. 662, 664, 98 Ct.Cl. 406 (1943); 1 Mertens, supra §§ 6A.01, 6A.12. See also Commissioner v. Raphael, 133 F.2d 442, 444–446 (9th Cir., 1943).

6. Int.Rev.Code of 1939 § 115(c) (as amended by § 147, Revenue Act of 1942, ch. 619, 56 Stat. 841). See Western Prods. Co., 28 T.C. 1196, 1207–1208 (1957).

were distributions in liquidation rather than ordinary dividends,[7] and we think the Tax Court's contrary finding is not clearly erroneous.[8] They appeared to be distributions by a going concern in the ordinary course of business. They were issued in the same amount at regular intervals, and, so far as this record reflects, may have been a continuation of an established pattern of regular dividends. The last preceded the final distribution in liquidation by more than a year, and taxpayer's record references do not support her assertion that they were financed by the sale of corporate assets.

■ As an alternative contention, taxpayer suggests that the judgment itself was in effect a final distribution in liquidation of the corporation, and therefore the entire amount collected on the judgment should be taxed as a return of capital. The argument is that the fraudulent sale was void at its inception; that the dividends and liquidating payment attributable to taxpayer's stock were wrongfully received by the wrongdoers, giving rise to an immediate obligation to repay the corporation; and that the suit in which the judgment was rendered was an action by the corporation to collect this corporate "asset" and pay it over to taxpayer as a distribution in liquidation.

Even if the suit had been based upon this elaborate fiction, the United States would not be bound to adopt it in assessing tax liability upon a recipient of benefits under the judgment.[9] However, we think it clear from the record that the suit was not a corporate action to collect and distribute a corporate asset, as taxpayer suggests, but an action by taxpayer seeking relief directly from the fraudulent purchasers. The wrong was done taxpayer, not the corporation, and the decree ran in taxpayer's favor without mention of an intervening corporate fiction. It is clear from the opinion of the Supreme Court of Oregon that the theory of recovery was that taxpayer was entitled to restitution from the managing officers because they had wrongfully acquired her stock and were unjustly enriched by receipt of the dividends and liquidating payment rightfully due her. Cf. Western Prods. Co., 28 T.C. 1196, 1208 (1957). Contrary to taxpayer's present contention, the court did not purport to award damages to the corporation for a loss which it had not sustained and then decree a fictitious distribution in liquidation by the corporation to taxpayer. Cf. Cotnam v. Commissioner, 263 F.2d 119, 122 (5th Cir., 1959).

### III

■ Taxpayer argues that all of the litigation costs were expenses incurred in the "collection of income" or the "conservation * * * of property held for the production of income," within the express language of Section

---

7. Both because of the presumptive correctness of the Commissioner's contrary determination, and because the burden rests always upon a taxpayer who seeks to bring himself within the statutory provisions permitting capital gains treatment. See, e. g., Sager Glove Corp. v. Commissioner, 311 F.2d 210, 211 (7th Cir., 1962); Carter v. Commissioner, 298 F.2d 192, 194–195 (8th Cir., 1962); H. Liebes & Co. v. Commissioner, 90 F.2d 932, 935 (9th Cir., 1937).

8. Whether payments to stockholders are dividends or distributions in liquidation is a question of fact (Fowler Hosiery Co. v. Commissioner, 301 F.2d 394, 397 (7th Cir., 1962); 1 Mertens, supra note 1, §§ 9.63, 9.84), and "Tax Court determinations of fact, including factual inferences from undisputed basic facts, may be set aside on appeal only if they are clearly erroneous." Chism v. Commissioner, 322 F.2d 956, 9th Cir., 1963.

9. As stated in taxpayer's brief: "Taxation is an intensely practical matter, and it deals with the realities, and not semblances; with substance and not form * * *", citing Ruoff v. Commissioner, 277 F.2d 222, 229 (3d Cir., 1960); Teleservice Co. v. Commissioner of Wyo. Valley, 254 F.2d 105, 110 (3d Cir., 1958); Urquhart v. Commissioner, 215 F.2d 17, 19 (3d Cir., 1954); Thompson v. Commissioner, 205 F.2d 73, 78 (3d Cir., 1953). See also United States v. Wheeler, 311 F.2d 60, 63 (5th Cir., 1963).

23(a) (2) of the Internal Revenue Code of 1939 and Section 212 of the Internal Revenue Code of 1954,[10] and therefore were deductible from gross income in their entirety.

Taxpayer's argument misconceives the purpose and effect of the pertinent statutory provisions. As the Supreme Court recently repeated in United States v. Gilmore, 372 U.S. 39, 44–45, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963),[11] Section 23(a) (2), adopted in 1942, did not create new types of deductible expenses; it simply made the old deductions applicable to new categories of income-producing activity. The same "ordinary and necessary expenses" were deductible after the adoption of Section 23(a) (2) as had been deductible before, and with the same restrictions and qualifications. The only change effected by the adoption of Section 23(a) (2) was that such expenses, theretofore deductible under Section 23(a) (1) (A) only when incurred "in carrying on any trade or business," were also made deductible under the new section when incurred, for example, "for the collection of income" or the "conservation * * * of property held for the production of income." It is not alone enough, as taxpayer contends, that costs be incurred in the collection of income or the conservation of property held for the production of income, any more than it would be alone enough that they were in-

curred in a trade or business; they must also qualify as necessary and ordinary expenses and satisfy the other recognized conditions to deductibility.

In Gilmore, the taxpayer argued that legal expenses in a divorce proceeding were deductible under Section 23(a) (2) as expenses incurred for the conservation of property held for the production of income, to the extent that they were attributable to taxpayer's defense against his wife's claim to a community property interest in his stockholdings. The Supreme Court rejected the contention. The Court held that the litigation costs were "personal" expenses arising out of taxpayer's marital relationship, that a "basic restriction upon the availability of a § 23(a) (1) deduction is that the expense item involved must be one that has a business origin," and that, in light of the origin and purpose of Section 23(a) (2), this basic restriction "must impose the same limitation upon the reach of §. 23(a) (2)." 372 U.S. at 46, 83 S.Ct. at 628, 9 L.Ed.2d 570.

The non-deductibiliy of capital expenditures, founded upon the principle that related disbursements and receipts should be given consistent tax treatment, is also a basic limitation upon Section 23(a) (1) (A), and the same limitation must therefore apply to Section 23(a) (2).[12] Thus, capital expenditures are not deductible as ordinary and necessary ex-

10. Both sections are applicable in the present case, and, so far as pertinent, contain the same provisions.

Int.Rev.Code of 1939, § 23, as amended, ch. 619, § 121(a), 56 Stat. 798 (1942):
"Deductions from gross income.
"In computing net income there shall be allowed as deductions:
"(a) Expenses.
  *     *     *     *     *
"(2) Non-trade or non-business expenses. In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."

Int.Rev.Code of 1954, § 212: ·

"Expenses for production of income
"In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—
"(1) for the production or collection. of income;
"(2) for the management, conservation or maintenance of property held for the production of income; * * *."

11. See also Trust of Bingham v. Commissioner, 325 U.S. 365, 374, 65 S.Ct. 1232, 89 L.Ed. 1670, 163 A.L.R. 1175 (1945); McDonald v. Commissioner, 323 U.S. 57, 62, 65 S.Ct. 96, 89 L.Ed. 68, 155 A.L.R. 119 (1944).

12. 4 Mertens, supra note 1, § 25A.14; Surrey & Warren, Federal Income Taxation 268 (1960).

penses whether incurred in connection with a trade or business or in collection of income or conservation of property held for the production of income. And this is true specifically of the kind of capital expenditures involved in the present case.

It is a rule virtually as old as the federal income tax itself that costs incurred in defending or perfecting taxpayer's claim to ownership of capital assets are capital expenditures, and not expenses deductible from ordinary income.[13] The rule is equally applicable to business and non-business activity;

the adoption of Section 23(a) (2) did not "alter the rule that expenses of acquiring or recovering title to property, or of perfecting title, are capital expenses which constitute a part of the costs or basis of the property. It simply enlarged the category of income from which expenses could be deducted." California & Hawaiian Sugar Ref. Corp. v. United States, 311 F.2d 235, 245 (Ct.Cl. 1962).[14]

The gist of the controversy between taxpayer and the managing officers in the state court litigation was the ownership of the stock.[15] It is true that taxpayer also sought return of dividends

13. Earlier authorities are collected in Nabstoll, Non-Trade and Non-Business Expense Deductions, 46 Mich.L.Rev. 1015 (1948), 2 Am.Univ.Tax Inst.Lectures 357 (1949); McDonald, Deduction of Attorneys' Fees for Federal Income Tax Purposes, 103 U.Pa.L.Rev. 168 (1954–1955); Brooks, Litigation Expenses and the Income Tax, 12 Tax Law Rev. 241 (1956–1957).

In view of the criticism of the rule based upon the contrary premise (see, e. g., Brookes, supra at 254–56), it is perhaps worth emphasizing that the nondeductibility of capital expenditures "is not restricted by the scope of § 263 [Int. Rev.Code 1954], but instead essentially depends on the construction given to 'expenses' in section 162(a)." Surrey & Warren, supra note 12, at 259. See Lewis v. Commissioner, 253 F.2d 821, 827 (2d Cir., 1958); Bowers v. Lumpkin, 140 F.2d 927, 928 (4th Cir., 1944). See also Munson v. McGinnes, 283 F.2d 333, 335 (3d Cir., 1960).

14. See also Wilson v. Commissioner, 313 F.2d 636 (5th Cir., 1963), affirming per curiam Robert L. Wilson, 37 T.C. 230 (1961); Manufacturers Hanover Trust Co. v. United States, 312 F.2d 785, 788 (Ct.Cl., 1963); Bowers v. Lumpkin, 140 F.2d 927, 928–929 (4th Cir., 1944); Surrey & Warren, supra, note 12, at 268, 271; 2 Am.Univ.Tax Inst.Lectures 357 (1949). For other recent applications of the rule see Erdman v. Commissioner, 315 F.2d 762 (7th Cir., 1963); Wise v. Commissioner, 311 F.2d 743 (2d Cir., 1963); United States v. Wheeler, 311 F.2d 60, 64 (5th Cir., 1963); Industrial Aggregate Co. v. United States, 284 F.2d 639, 644 (8th Cir., 1960); Munson v. McGinnes, 283 F.2d 333, 336–337 (3d Cir., 1960); Lewis v. Commissioner, 253 F.2d 821, 827 (2d Cir., 1958); Kelly v. Commissioner, 228 F.2d 512, 515 (7th Cir., 1956); 4 Mertens, supra note 1, §§ 25.24, 25A.16; Comment, Federal Income Tax Treatment of Attorneys' Fees, 40 Texas L.Rev. 137 (1961–1962). Cases from this Circuit include Mel Dar Corp. v. Commissioner, 309 F.2d 525, 534 (9th Cir., 1962); Shipp v. Commissioner, 217 F.2d 401 (9th Cir., 1954); Schwabacher v. Commissioner, 132 F.2d 516, 519 (9th Cir., 1942); Moynier v. Welch, 97 F.2d 471, 472–473 (9th Cir. 1938); Murphy Oil Co. v. Burnet, 55 F.2d 17, 26 (9th Cir., 1932). Cf. Vincent v. Commissioner, 219 F.2d 228 (9th Cir., 1955); Heller v. Commissioner, 147 F.2d 376 (9th Cir., 1945).

Some courts have reached the same result by reading the language of § 23(a) (2) and § 212 ("production or collection of income," "management, conservation or maintenance" of property) as excluding defense or perfection of title. See, e. g. Kelly v. Commissioner, 228 F.2d 512, 514–515 (7th Cir., 1956); Brown v. Commissioner, 215 F.2d 697, 699 (5th Cir., 1954); Garrett v. Crenshaw, 196 F.2d 185 (4th Cir., 1952); Helvering v. Stormfeltz, 142 F.2d 982 (8th Cir., 1944); 4 Mertens, supra note 1, § 25A.09. See also United States v. Gilmore, 372 U.S. 39, 44, 83 S.Ct. 623, 626–627, 9 L.Ed.2d 570 (1963), "For in context 'conservation of property' seems to refer to operations performed with respect to the property itself, such as safeguarding or upkeep, rather than to a taxpayer's retention of ownership in it."

15. The present case is thus distinguishable from those in which it has been concluded that the primary issue was not ownership, but rather the right to possession (Ruoff v. Commissioner, 277 F.2d 222,

paid on the stock, but recovery of the dividends depended upon establishing taxpayer's right to stock ownership. Since perfection of taxpayer's claim to ownership was the essence of the suit, the costs of the litigation were capital expenditures and, under the authorities cited, were not expenses deductible from ordinary income. Taxpayer is not denied tax credit for these disbursements: as the Tax Court held, they are added to taxpayer's basis in the stock, thus receiving the same tax treatment as the property itself.

Taxpayer argues that the state court held that the sale was void at its inception and that ownership never passed from taxpayer. From this premise taxpayer contends that the state court suit was not one to establish ownership but merely to obtain an accounting. This seems to us a play on words. Taxpayer may not assert that because she prevailed upon the central issue of ownership it was never present in the case.

It has been held, as taxpayer argues, that costs of litigation are not capital expenditures where the taxpayer asserts that he has "equitable title" and seeks to establish legal title.[16] But we think the distinction irrelevant to the proper tax treatment of the costs of litigation, and all but one of the decided cases are to this effect.[17]

We also think it immaterial that taxpayer recovered cash rather than the property itself [18]—at least where (as here) the cash was in lieu of the property, the property had a basis,[19] and a taxable conversion occurred. A different rule would turn tax consequences on form. It would also produce the anomalous result of requiring an unsuccessful defendant in litigation over title, which terminates in a cash settlement or award, to capitalize his expenses, while permitting the successful plaintiff to deduct his expenses from ordinary income.

There are circumstances in the present case from which it might be argued that taxpayer's recovery in the state court was not based on the theory that the fraudulent sale was rescinded, but rather that it was confirmed—after first being "reopened" to permit an increase in the purchase price on equitable grounds.[20] It is nonetheless true that the principal issue

229–230 (3d Cir., 1960), distinguished on this basis in Manufacturers Hanover Trust Co. v. United States, 312 F.2d 785, 790 n. 6 (Ct.Cl.1963); Vincent v. Commissioner, 219 F.2d 228 (9th Cir., 1955)), or compliance with the operating clauses of a lease (Industrial Aggregate Co. v. United States, 284 F.2d 639, 645–647 (8th Cir., 1960)), or the price to be paid for the property (Naylor v. Commissioner, 203 F.2d 346, 347 (5th Cir., 1953); Heller v. Commissioner, 147 F.2d 376, 377 (9th Cir., 1945)).

Moreover, as we have suggested, to the extent that these cases (together with Commissioner v. Coke, 201 F.2d 742 (5th Cir., 1953), and Otto C. Doering, Jr., 39 T.C. 647 (Jan. 4, 1963), also relied upon by taxpayer) assume that Section 23(a)(2) created a new category of deductions (i. e., disbursements incurred in the "collection of income") we think they are based upon an unsound premise.

16. Allen v. Selig, 200 F.2d 487 (5th Cir., 1952).

17. See, e. g., Erdman v. Commissioner, 315 F.2d 762 (7th Cir., 1963); Garrett v. Crenshaw, 196 F.2d 185 (4th Cir., 1952); Schwabacher v. Commissioner, 132 F.2d 516 (9th Cir., 1942).

18. Deduction was denied on defense of title grounds though recovery was in cash in Helvering v. Stormfeltz, 142 F.2d 982 (8th Cir., 1944). See also Munson v. McGinnes, 283 F.2d 333 (3d Cir., 1960); Ward v. Commissioner, 224 F.2d 547, 553–555 (9th Cir., 1955); Davis v. Commissioner, 151 F.2d 441, 442–443 (8th Cir., 1945), denying deduction on the ground that disbursements were selling expenses.

19. It is argued with force in 12 Tax L.Rev. 241 (1956–1957) and held in California & Hawaiian Sugar Ref. Corp. v. United States, 311 F.2d 235 (Ct.Cl.1962), that disbursements are not to be capitalized when the underlying transaction is such that the disbursements cannot be added to a basis and thus receive consideration in determining tax.

20. Taxpayer's complaint prayed for rescission of the sale of her stock, and the state trial court purported to grant this relief. On the other hand, the state appellate

litigated was taxpayer's right to the income which the stock had produced and the value of the stock on liquidation—in short, all that gave ownership of the stock meaning—and the litigation was therefore in essence in defense of taxpayer's right to the property.

Moreover, the result would not be changed if the litigation were viewed as action taken to effectuate the initial sale of the stock to the wrongdoers, though on revised terms. Costs connected with the disposition of a capital asset are also capital expenditures to be added to taxpayer's basis, or offset against the sales price, rather than expenses deductible from ordinary income.[21] In Munson v. McGinnes, 283 F.2d 333 (3d Cir., 1960), the Court of Appeals for the Third Circuit applied the rule to a factual situation strikingly similar to that in the present case. The court concluded "that what occurred was in substance and reality an equitable revision of the original terms of sale. Thus, the counsel fee in question was, to one in the seller's position, an expense of modifying terms of sale, incurred as an essential incident of a capital transaction in the disposition of property." 283 F.2d at 335.[22] Munson involved non-business income and the taxpayer invoked Section 212(1); in denying deduction from ordinary income the court held "that in those situations where the capitalization of business selling expenses is a long established and accepted requirement, despite Section 162, equivalent or closely analogous nonbusiness expense must also be capitalized and used only as an offset to capital gain, despite Section 212(1)." 283 F.2d at 336.[23]

Affirmed.

21. 4 Mertens, supra note 1, § 25A.15.

22. See also Murphy Oil Co. v. Burnet, 55 F.2d 17, 26 (9th Cir., 1932), involving the tax status of an amount received in settlement of a suit by a defrauded vendor, in which we said, "the payment made to the vendor was substantially a deferred payment for the property. It was therefore essentially a capital investment and not allowable as a deduction from income." And see Ward v. Commissioner, 224 F.2d 547, 555 (9th Cir., 1955): "In the case before us, the payments for Parks' and Seeley's services were, in effect, a capital expenditure to help the

court held that since the corporation had been liquidated rescission was impossible, and sustained the money judgment on the doctrine of unjust enrichment—a quasi-contractual obligation to make restitution. The state court's decree awarded interest on dividends and liquidating payment from the date received by the wrongdoers, and no interest was awarded on any amount from the date of the initial sale. Indeed, the wrongdoers were credited with an amount equal to interest from the date of sale to the date of the liquidation payment on the consideration which they had paid taxpayer.

sale. (citing) Their efforts were 'beneficial' to the taxpayer in that by the raising of the bid, he secured a higher price for his share. Hence, the expenditures were a legitimate offset against the cost of the property sold. But they cannot be classified as deductible expenses * * *." But see Naylor v. Commissioner, 203 F.2d 346 (5th Cir., 1953), criticized at 4 Mertens, supra note 1, § 25A.15 n. 69; Commissioner v. Coke, 201 F.2d 742 (5th Cir., 1953), criticized in Munson v. McGinnes, 283 F.2d 333, 337 (3d Cir., 1960).

23. See also Davis v. Commissioner, 151 F.2d 441, 443 (8th Cir., 1945): "Congress did not intend to permit an individual to deduct from gross income, as ordinary and necessary expenses under § 23 (a) (2), selling costs of a kind which would not be deductible as business expenses under § 23(a) (1) (A)." The same result is reached in Ward v. Commissioner, 224 F.2d 547 (9th Cir., 1955), in part by reading the language of Section 23(a) (2) as excluding selling expense. And see Mathiasen v. Commissioner, 310 F.2d 738 (3d Cir., 1962), affirming per curiam 30 P-H Tax Ct.Mem. 1838 (1961) (expenses in acquiring title).