**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-26

UNITED STATES TAX COURT

PAUL ROGER TSAI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1450-12S.                    Filed March 28, 2013.

Paul Roger Tsai, pro se.

<u>Rollin G. Thorley</u>, for respondent.

SUMMARY OPINION

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the petition

was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable

by any other court, and this opinion shall not be treated as precedent for any other

case.

Respondent determined the following income tax deficiencies and penalties in

regard to petitioner's 2008 and 2009 tax years:

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2008 | $1,746 | $349.20 |
| 2009 | 4,323 | 864.60 |

After concessions by petitioner,[2] the issues remaining for decision are:

(1) Whether petitioner is entitled to a deduction for legal fees he paid in 2008

and 2009;

---

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]  Petitioner concedes that he is not entitled to the following deductions claimed on his Schedules C, Profit or Loss From Business, for tax years 2008 and 2009:

| Adjustment to Income | 2008 | 2009 |
|----------------------|------|------|
| Schedule C -- other expenses | $ 764 | $1,227.00 |
| Schedule C -- car and truck | 1,329 | 1,566.91 |
| Schedule C -- contract labor | --- | 4,500.00 |
| Schedule C -- depreciation | 2,177 | 2,998.00 |

(2) whether petitioner is entitled to a dependency exemption deduction with respect to his son for tax years 2008 and 2009;[3]

(3) whether petitioner is entitled to a dependency exemption deduction with respect to his daughter for tax year 2009;

(4) whether petitioner qualifies for head of household filing status for 2009; and

(5) whether petitioner is liable for accuracy-related penalties for 2008 and 2009.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

Petitioner resided in the State of Nevada when the petition was filed.

## Legal Fees

On July 28, 1979, petitioner and his former spouse (Ms. Hsu) married. The former couple had two children: a son and a daughter.

---

[3] Petitioner did not claim dependency exemption deductions for his son on his 2008 and 2009 tax returns; however, this issue was tried to the Court by the consent of the parties. See Rule 41(b)(1).

In 1991 during their marriage, petitioner and Ms. Hsu purchased 2.5 acres of undeveloped land in Las Vegas, Nevada, for $55,000 (property).

By May 1995 petitioner and Ms. Hsu were in the midst of a divorce and petitioner had hired an attorney to represent him in the divorce proceedings (divorce attorney).

Beginning on July 13, 1995, petitioner and Ms. Hsu attended numerous hearings conducted by the District Court for Clark County, Nevada, Family Division (family court), during which the former couple reached agreement regarding child custody, child support, and the division of community property in connection with their divorce.

On April 10, 1996, the family court filed an order (1996 order) stating that the former couple would share joint legal custody of their children, with Ms. Hsu having primary physical custody. The 1996 order further states that petitioner shall pay child support of $650 per month to Ms. Hsu. The 1996 order also states that the property "shall be placed in trust for the children and that the * * * [former couple] will be co-trustees of that property". Moreover, the 1996 order states that "should the property sell[,] the proceeds from the property shall be either placed in trust or reinvested for the benefit of the children; a Quit Claim Deed shall be signed by * * *

[the former couple] placing the property in the children's names with * * * [the former couple] as Trustees".

On or around May 1, 1996, and in accordance with the 1996 order, petitioner and Ms. Hsu executed a quitclaim deed and placed the property in trust for the benefit of their children (children's trust).

On or around June 1, 2007, over a decade after the children's trust was created, the property was sold for $2,025,000. When Ms. Hsu attempted to place the proceeds from the sale into the children's trust, petitioner refused, arguing that the value of the children's trust exceeded the funds needed to finance the children's education and that any funds not used for the children's education should be equally divided between petitioner and Ms. Hsu. Petitioner also argued that the sale proceeds for his children's education should be split between two trusts with petitioner and Ms. Hsu each maintaining his or her own trust for the children.

On October 3, 2007, the family court issued findings of fact, conclusions of law, and an order (2007 order), holding, inter alia, that petitioner and Ms. Hsu never intended to retain an interest in the property; rather, they both agreed to transfer "all the right, title, and interest" in the property to their children's trust in

1996.  Accordingly, the family court ordered that all of the sale proceeds be distributed to the children's trust.

Petitioner appealed the 2007 order to the Supreme Court of the State of Nevada (Nevada Supreme Court).  On appeal petitioner claimed that the family court erred:  (1) By concluding that the former couple agreed to transfer their entire interest in the property to their children's trust in 1996; (2) by permitting the trust to reimburse Ms. Hsu for the children's primary and secondary education in private schools, arguing that such payments constituted an improper retroactive modification to his child support obligations; and (3) by concluding that the family court had jurisdiction to clarify the children's trust where neither he nor Ms. Hsu joined the children's trust as a party to the litigation.  The Nevada Supreme Court affirmed the family court's decision.

Petitioner paid legal fees to his divorce attorney in 2008 and 2009 for appealing the 2007 order.

Dependency Exemption Deductions and Filing Status

In 2008 and 2009 petitioner resided in Las Vegas, Nevada.  During those years petitioner's son was a full-time college student and resided in California alone or with college roommates.

In 2009 from January until August, petitioner's daughter resided with Ms. Hsu in Hong Kong. In August petitioner's daughter reached the age of 18 and moved from Hong Kong to New York to attend college full time, residing in on-campus housing at the college for the remainder of 2009. From January to July 2009, petitioner paid $680 per month of child support for his daughter.

Petitioner's Tax Returns

Petitioner timely prepared and filed his 2008 and 2009 Federal income tax returns claiming head of household filing status and a dependency exemption deduction with respect to his daughter. Attached to his 2008 return was a Schedule A, Itemized Deductions, on which petitioner claimed a deduction for legal fees of $8,378. Attached to his 2009 return was a Schedule A on which petitioner claimed a deduction of $10,055 described as "SFTY BOX/LEGL/ INVSMT EXPENSES etc.", almost all of which were for legal fees.

In a notice of deficiency respondent disallowed, inter alia, the 2008 claimed deduction for legal expenses and $10,010 of the 2009 claimed deduction for "SFTY BOX/LEGL/INVSMT EXPENSES etc", allowing a $45 deduction for expenses associated with petitioner's safety deposit box. Respondent further disallowed petitioner's claimed dependency exemption deduction with respect to his daughter for 2009. In addition, respondent determined that petitioner did not qualify for head

- 8 -

of household filing status in 2009 because petitioner "did not furnish more than one-half the total cost of keeping up a home for * * * [himself] and a dependent" in that year.[4]

Discussion

In general the Commissioner's determinations in a notice of deficiency are presumed correct, and the burden is on the taxpayer to show that the determinations are erroneous.[5] See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and a taxpayer bears the burden of proving that the taxpayer is entitled to any deduction claimed. Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

---

[4] For 2008, however, respondent did not adjust petitioner's claimed dependency exemption deduction for his daughter or his claimed head of household filing status.

[5] Pursuant to sec. 7491(a)(1), the burden of proof as to factual matters may shift from the taxpayer to the Commissioner under certain circumstances. However, petitioner neither alleges that sec. 7491(a)(1) applies nor has established that he complied with the requirements of sec. 7491(a)(2). Accordingly, the burden of proof remains on petitioner.

I. Legal Fees

Petitioner contends that the legal expenses he reported on his 2008 and 2009 returns were paid in connection with litigation to collect income and are therefore deductible under section 212.

Respondent maintains, however, that petitioner's claimed legal expenses are nondeductible because those expenses derive from a suit that originated in a personal or family matter and therefore are personal, living, or family expenses within the meaning of section 262. We agree with respondent.

Ordinary and necessary expenses paid for the production or collection of income are generally deductible by taxpayers.[6] Sec. 212(1). On the other hand, personal, living, and family expenses are generally not deductible. Sec. 262(a). Moreover, legal fees paid or incurred in perfecting title to a capital asset are nondeductible capital expenditures. Sec. 263; Woodward v. Commissioner, 397 U.S. 572, 575-577 (1970).

---

[6] Petitioner does not argue that the legal expenses he reported were paid for the management, conservation, or maintenance of property held for the production of income. See sec. 212(2). Moreover, the record does not support such an argument. See Duntley v. Commissioner, T.C. Memo. 1987-579 (acknowledging that the terms "management", "conservation", and "maintenance" do not refer to a taxpayer's efforts to retain an ownership in land).

Whether legal fees are deductible under section 212, or nondeductible under section 262 or 263, depends on the origin and character of the underlying claim, not on its potential effects on the fortunes of the taxpayer or the taxpayer's purpose for undertaking the litigation.  See Woodward v. Commissioner, 397 U.S. at 577-578 (rejecting a subjective test founded on the motive or purpose of the taxpayer in undertaking litigation); United States v. Gilmore, 372 U.S. 39, 48-49 (1963).  Legal fees paid or incurred in connection with a divorce are generally nondeductible because the claims underlying the legal fees typically originate from personal or family matters, not from an income-producing activity.  United States v. Patrick, 372 U.S. 53, 57 (1963); Gilmore, 372 U.S. at 51; Fleischman v. Commissioner, 45 T.C. 439, 446 (1966).

However, a deduction for legal expenses is not necessarily precluded simply because the taxpayer's underlying claim arose in a divorce action.  Hahn v. Commissioner, T.C. Memo. 1976-113.  Rather, we must identify the underlying claim that gave rise to the legal expenses at issue and then determine whether the origin of that claim is personal in nature.  See Peters, Gamm, West & Vincent, Inc. v. Commissioner, T.C. Memo. 1996-186; see also Keller Street Dev. Co. v. Commissioner, 688 F.2d 675, 678 (9th Cir. 1982) (setting forth a two-step test in the Ninth Circuit requiring the court to (1) identify the transaction or event from

which the claim originated and then to (2) characterize that transaction or event),

aff'g T.C. Memo. 1978-350.

Petitioner primarily argues that the legal expenses he claimed were paid for the purpose of collecting a portion of the property sale proceeds, i.e., to collect income, and are therefore deductible under section 212.  This argument is misplaced because, as previously stated, the tax treatment of the legal expenses at issue hinges on the origin and character of petitioner's claims, not the possible consequences on his fortunes if those claims were to prove successful or his purpose for undertaking the litigation.  See Woodward v. Commissioner, 397 U.S. at 577-578; Gilmore, 372 U.S. at 48-49.

Petitioner further argues that because the claims underlying his legal expenses derive from the property sale in 2007, over a decade after his divorce, those claims were not personal, living, or family expenses under section 262(a).  We disagree.

The parties stipulated that the 2008 and 2009 legal expenses at issue were paid to petitioner's divorce attorney for appealing the 2007 order entered by the family court.  In his appeal of the 2007 order to the Nevada Supreme Court, petitioner claimed that the family court erred:  (1) By concluding that the former couple agreed to transfer their entire interest in the property to their children's trust

in 1996; (2) by permitting the trust to reimburse Ms. Hsu for the children's primary and secondary education in private schools, arguing that such payments constituted an improper retroactive modification to his child support obligations; and (3) by concluding that the family court had jurisdiction to clarify the children's trust where neither he nor Ms. Hsu joined the children's trust as a party to the litigation.

We agree with petitioner that the property sale was "the event that prompted" him to bring suit. See Keller Street Dev. Co. v. Commissioner, 688 F.2d at 681. However, the record establishes, and we conclude, that the property sale was personal in character.

Petitioner and Ms. Hsu purchased the property as husband and wife. Pursuant to their child custody, child support, and community property agreement, as well as the 1996 order, petitioner and Ms. Hsu placed the property in their children's trust to provide funds for their children's education. The former couple sold the property in their capacities as cotrustees of their children's trust. Furthermore, interest petitioner might have retained in the property would have been acquired during and because of his marriage to Ms. Hsu. See Smith v. Commissioner, T.C. Memo. 1980-182. Moreover, petitioner has provided no evidence that the property sale was associated with a profit-seeking activity. See

Gilmore, 372 U.S. at 51. Rather, the evidence indicates that the property sale was personal in character. Although the property sale occurred over a decade after the former couple's divorce, the record establishes that the personal character of the transaction was not changed by the passage of time. See Smith v. Commissioner, T.C. Memo. 1980-182. Therefore, we conclude on the basis of the record as a whole that petitioner's legal fees originated from a personal and family matter stemming from his marital relationship with Ms. Hsu.

We do not question whether petitioner believed he retained an ownership interest in the property and thus was entitled to a portion of the property sale proceeds. However, even if petitioner could point us to an income-producing activity from which his ownership claim arose, such claim is fundamentally an attempt to perfect or establish title to the property and, therefore, any legal fees incurred with respect thereto would be characterized as nondeductible capital expenditures. See Woodward v. Commissioner, 397 U.S. at 576; Spangler v. Commissioner, 323 F.2d 913, 919 (9th Cir. 1963), aff'g T.C. Memo. 1961-341. Furthermore, the claims underlying petitioner's legal expenses not only relate to perfecting title to the property but also involve retroactive modification of child support and the family court's jurisdiction over the children's trust. Petitioner provided no evidence regarding what portion of the legal fees was paid to

specifically address his claim to perfect title to the property, and thus we would be unable to determine what portion would be capitalized if the matter affected redetermination of the deficiency for either year in issue.  See Hill v. Commissioner, T.C. Memo. 2010-268.  In any event, because petitioner was unsuccessful in perfecting title, he has no asset against which to capitalize any portion of the claimed legal expenses.  See Kellner v. Commissioner, T.C. Memo. 1982-729.

In sum, petitioner has not met his burden of proving that he is entitled to a deduction for any portion of the legal fees at issue.  Instead, the record indicates that petitioner's claims underlying the legal expenses at issue originated from a personal and family matter and are therefore nondeductible.  Accordingly, we sustain respondent's disallowance of petitioner's claimed deductions for legal fees for 2008 and 2009.

## II.  Dependency Exemption Deduction for Petitioner's Son

In general, a taxpayer may claim a dependency exemption deduction "for each individual who is a dependent (as defined in section 152) of the taxpayer for the taxable year."  Sec. 151(a), (c).  As relevant herein, section 152(a) defines a dependent to include a "qualifying child" of the taxpayer.  An individual must meet all of the following conjunctive tests to be a qualifying child:  (1)

Relationship test; (2) residency test; (3) age test; and (4) support test.  Sec. 152(c)(1).

The parties agree that petitioner's son satisfies the relationship test in section 152(c)(1)(A) and the age test in section 152(c)(1)(C).  The parties disagree as to whether petitioner's son meets the residency test in section 152(c)(1)(B) and the support test in section 152(c)(1)(D).

Under the residency test, a qualifying child must share the same principal place of abode as the taxpayer for more than one-half of each year in issue.[7]  Sec. 152(c)(1)(B).  Petitioner and his son did not share the same principal place of abode for more than one-half of 2008 or 2009 because his son resided in California alone or with college roommates and petitioner resided in Las Vegas, Nevada, during those years.  See id.  Thus, petitioner's son was not a qualifying child under section 152(c) for 2008 or 2009.  Accordingly, we hold that

---

[7] In the case of divorced parents, and only under certain limited circumstances, a noncustodial parent may be permitted to claim a child as a "qualifying child" even though the residency test has not been satisfied, if the custodial parent signs a written release of the claim to the dependency exemption deduction.  See sec. 152(e).  We note, however, that even if sec. 152(e) were to apply in the instant case, petitioner has provided no evidence that Ms. Hsu signed a written release with respect to their son or daughter for 2008 or 2009.

petitioner is not entitled to a dependency exemption deduction with respect to his son for the years in issue.[8]

### III. Dependency Exemption Deduction for Petitioner's Daughter

In the notice of deficiency, respondent disallowed petitioner's claimed dependency exemption deduction with respect to his daughter for 2009. Like petitioner's son, the parties agree that petitioner's daughter satisfies the relationship test in section 152(c)(1)(A) and the age test in section 152(c)(1)(C). The parties disagree, however, as to whether petitioner's daughter meets the residency test in section 152(c)(1)(B) and the support test in section 152(c)(1)(D).

The record establishes that petitioner's daughter, like his son, did not share with petitioner the same principal place of abode for more than one-half of 2009 because she resided in Hong Kong with her mother from January until July and subsequently resided at her college in New York for the remainder of the year.[9] Therefore, we hold that petitioner's daughter was not a qualifying child under section 152(a) in 2009 and we sustain respondent's disallowance of the dependency exemption deduction petitioner claimed for her for 2009.

---

[8] Because of our holding and the conjunctive nature of the requirements in sec. 152(c)(1), we need not address the support test provided by sec. 152(c)(1)(D).

[9] Insofar as sec. 152(e) may otherwise apply, see supra note 7.

## IV. Head of Household Filing Status for 2009

As relevant herein, section 2(b)(1)(A)(i) provides that a taxpayer qualifies as a head of a household if he maintains as his home a household that constitutes the principal place of abode of a qualifying child for more than one-half of the taxable year.

Respondent disallowed petitioner's claimed head of household filing status for 2009. We have previously held that petitioner is not entitled to a dependency exemption deduction for his son or daughter for 2009 because neither is a qualifying child. Accordingly, we hold that petitioner is not entitled to elect head of household filing status for 2009.

## V. Accuracy-Related Penalty

Section 6662(a) and (b)(1) imposes a penalty equal to 20% of the amount of any portion of an underpayment attributable to negligence or disregard of rules or regulations. The term "negligence" includes any failure to make a reasonable attempt to comply with tax laws, and "disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c). Negligence also includes any failure to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs.

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty with respect to any portion of an underpayment if the taxpayer establishes that (1) there was reasonable cause for such portion and (2) the taxpayer acted in good faith with respect to such portion. The decision as to whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances indicating that a taxpayer acted with "reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Id.

Section 7491(c) places on the Commissioner the burden of production with respect to any penalty, thereby requiring the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. See id.; see also Rule 142(a); Welch v. Helvering, 290 U.S. at 115.

The record indicates that petitioner's underpayment was generally attributable to negligence, either because of his failure to properly substantiate items or his

failure to comply with tax laws.  Accordingly, we hold that respondent has satisfied his burden of production.

The record establishes that petitioner failed to properly substantiate the following items:[10]

| Adjustment | 2008 | 2009 |
|---|---|---|
| Schedule C -- other expenses | $ 764 | $1,227.00 |
| Schedule C -- car and truck | 1,329 | 1,566.91 |
| Schedule C -- contract labor | --- | 4,500.00 |
| Legal fees | --- | 4,500.24 |

Petitioner concedes that he is liable for the accuracy-related penalty with respect to these items.

Petitioner argues, however, that he had reasonable cause for, and acted in good faith with respect to, the following claimed deductions:

| Adjustment | 2008 | 2009 |
|---|---|---|
| Legal fees | $8,377.95 | $5,509.76 |
| Schedule C -- depreciation | 2,177.00 | 2,998.00 |
| Dependency exemption | --- | 3,650.00 |

The single largest item (by dollar amount) adjusted by respondent for each year in issue was petitioner's claimed deduction for legal fees, and we

---

[10] Respondent concedes that petitioner paid all of the $8,377.95 of legal fees claimed on his 2008 return and $5,509.76 of the legal fees claimed on his 2009 return but maintains that the legal fees were nevertheless nondeductible personal expenses.

acknowledge that a determination as to whether he is entitled to that deduction rests heavily on the particular facts of his case. On the basis of his testimony and the evidence presented at trial, we are satisfied that petitioner, whose command of the English language is limited, made a good-faith effort to determine his proper tax liability with respect to the above items and that his underpayment attributable thereto results from an honest misunderstanding of law that was reasonable under the circumstances.[11] Likewise, we are satisfied that, on basis of the particular facts of this case, petitioner had reasonable cause for, and acted in good faith with respect to, his claimed head of household filing status for 2009. Accordingly, we hold that petitioner is not liable for the accuracy-related penalty with respect to the portion of the underpayment attributable to the aforementioned items he claimed.

## Conclusion

We have considered all of the arguments advanced by the parties, and, to the extent not expressly addressed, we conclude that those arguments do not support a result contrary to our decision herein.

---

[11] For instance, petitioner substantiated much of his depreciation expenses during respondent's examination of his 2008 and 2009 returns but was unaware that he was required to capitalize expenses associated with certain types of tools he used in his business. Moreover, for 2008, respondent allowed both a head of household filing status and a dependency exemption deduction for petitioner's daughter, and petitioner continued to pay child support for his daughter until August 2009.

To give effect to our disposition of the disputed issues as well as petitioner's concessions,

<u>Decision will be entered</u>

<u>under Rule 155</u>.