*Decision will be entered under Rule 50.*

MEYER J. FLEISCHMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3606–64. Filed February 21, 1966.

*Sol Goodman,* for the petitioner.
*Richard M. Schwartz,* for the respondent.

SIMPSON, *Judge:* The Commissioner has determined a deficiency in the petitioner's income tax for 1962 in the amount of $725.60. The issue in this case is whether the petitioner may deduct legal expenses incurred in defending his wife's lawsuit to set aside their antenuptial contract.

#### FINDINGS OF FACT

Meyer J. Fleischman, the petitioner, is a physician in Cincinnati, Ohio. He reported his income on the cash method of accounting and filed his 1962 income tax return with the district director of internal revenue at Cincinnati, Ohio.

On February 25, 1955, petitioner entered into an antenuptial agreement with Joan Ruth Francis. That agreement was made in contemplation of marriage and provided:

Now, THEREFORE, it is agreed between said parties that should said marriage terminate in the future through divorce or annulment that at said time of the granting of the annulment or divorce Party of the Second Part [Meyer] shall pay to Party of the First Part [Joan] the sum of Five Thousand ($5,000.00) Dollars in cash. In consideration of said payment the parties hereto agree and do hereby release and forever relinquish any and all claims to or interest of any kind in any property, whether real, personal or mixed which either party has now or may have during his or her lifetime or at their death, whether said interest should be by way of inheritance, distributive share, statutory exemptions or allowance, dower or otherwise, and each party agrees that all of each party's respective property upon death shall go to his or her devisees, legatees, other heirs, next of kin and/or assigns. The parties hereto agree to do such things and to deliver such instruments from time to time as may be necessary or desirable to carry into effect the foregoing agreement.

Petitioner and Joan R. Francis were married on February 26, 1955. On December 20, 1961, Joan filed for a divorce in the Court of Common Pleas, Division of Domestic Relations, Hamilton County, Ohio. In her suit for divorce the wife made the following prayer:

WHEREFORE, plaintiff prays that she may be divorced from defendant Meyer J. Fleischman; that she be awarded temporary and permanent alimony; that during the pendency of this cause defendant Meyer J. Fleischman be enjoined and restrained from concealing, secreting and/or disposing of any property of any kind or type, and that defendant Rae Goldstein be enjoined and restrained during the pendency of this cause from paying over or delivering unto defendant Meyer J. Fleischman any property of any kind or type, including but not limited to money, and from concealing, secreting and/or disposing of any property of the Fleischman Realty Company in her possession or under her control. That plaintiff be awarded a fair and equitable division of all properties, real and personal, of the defendant Meyer J. Fleischman, and for all such other and further relief to which she may be entitled in the premises, including her attorney fees and expenses.

On December 26, 1961, she filed another action in the Court of Common Pleas, Hamilton County, Ohio. The latter suit was instituted to set aside the antenuptial agreement and was necessary because the domestic relations division had no jurisdiction to declare the contract void and invalid. In her petition, she alleged that her husband had deceived her by false representations concerning the validity of the agreement, and that at the time of the agreement and at the time of filing suit she had no idea of the nature and extent of the defendant's property. She asserted that the provisions made for her under the agreement were grossly disproportionate to her husband's means.

A decree of divorce was entered on October 19, 1962. The suit to rescind and invalidate the antenuptial agreement was dismissed with prejudice on the plaintiff's application October 22, 1962.

Petitioner did not deduct the legal expenses incurred in connection with the divorce proceeding. Petitioner did deduct on his 1962 return $3,000 for legal expenses incurred in defending the suit to invalidate the antenuptial agreement signed on February 25, 1955. Respondent disallowed this deduction and determined a deficiency of $725.60. This deficiency is in issue here.

OPINION

The sole question in this case is whether petitioner is entitled to deduct $3,000 in legal expenses incurred in defending his wife's suit to set aside an antenuptial agreement.

We hold that he is barred from deducting these expenses by section 262 of the Internal Revenue Code of 1954 [1] and the decision of the Supreme Court in *United States* v. *Gilmore*, 372 U.S. 39 (1963).

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.

The petitioner's brief asserts first that his position was adequately set forth in the opinion of *Carpenter* v. *United States*, 338 F. 2d 366 (Ct. Cl. 1964). Second, he argues that *Erdman* v. *Commissioner*, 315 F. 2d 762 (C.A. 7, 1963), affirming 37 T.C. 1119 (1962), supports his position. Lastly, petitioner suggests that the litigation giving rise to the legal expenses here in issue did not grow out of the marriage relationship, but sprang from rights excluded from that relationship. The respondent has countered that the *Carpenter* case is distinguishable; that *Erdman* is inapposite; and that the suggested distinction between rights flowing from the marriage relationship and rights flowing from an antenuptial agreement is one of form and should be rejected. In the alternative, respondent urges that the expenses were incurred in defending title to property and should be capitalized, not allowed as a deduction.

We agree with all three of respondent's arguments and, therefore, do not reach his alternative proposition.

Petitioner's first contention, that his position is sustained by *Carpenter* is untenable. *Carpenter* involved a deduction for legal expenses paid for tax counsel in the course of a divorce proceeding. The court found these payments to be deductible under section 212(3) as an ordinary and necessary expense paid in connection with the determination of a tax. In Fleischman's case, there is no suggestion in the record that the legal expenses involved were for consultation and advice on tax matters. The stipulation clearly states that the expenses were incurred in defending a suit to set aside and declare void an antenuptial contract.

If petitioner means to rely on *Carpenter* to sustain his case under section 212(2) or 212(1), he is left with the liability that the case did not deal with those paragraphs. Paragraph (3) of section 212, as the *Carpenter* case holds, expresses a policy and has a meaning quite different from paragraphs (1) and (2). In fact, the court pointed out in *Carpenter* that the legal fees would not be deductible under section 212(2).

If petitioner cites *Carpenter* for the proposition that certain legal fees can be deducted even though incurred in connection with a divorce, he is certainly correct. This Court has so held in the case of *Ruth K. Wild*, 42 T.C. 706 (1964). The question in the case before us, however, is whether *these* legal expenses are deductible, and in resolving that issue, the *Carpenter* case is of no assistance.

The petitioner's second argument is that the case of *Erdman* v. *Commissioner*, may be pertinent. We do not agree. *Erdman* concerned the deductibility of legal expenses incurred by taxpayers defending their title to property as beneficiaries of a testamentary trust. In the alternative, it was contended that the trust was entitled to deduct these expenses. This Court held that the attorney's fees were

an expenditure of the trust, not of the taxpayer. In addition, the trust was not permitted to deduct the fee currently as it was charged to trust corpus, not income. *Calvin Pardee Erdman*, 37 T.C. 1119 (1962).

On appeal, the Seventh Circuit upheld the Tax Court on both grounds and added that the taxpayer's expenses were capital in nature, being in defense of title, and not deductible for that reason as well. *Erdman* v. *Commissioner, supra*. It is our view that the factual and legal issues in *Erdman* are so significantly different from those in this case that it is of no assistance in reaching our decision.

The expenditures in question are deductible, if at all, only under section 212.[2] Since there is not the slightest indication in the record that the counsel fees concerned taxes, we do not consider this case under section 212(3). In addition, there is no support for the view that the petitioner incurred the legal expenses for the production or collection of income, nor does he argue that he did; therefore, section 212(1) is not raised. The petition alleges that the expense was for the preservation and protection of taxpayer's real property inherited from his mother. This leaves only the suggestion that the expenses are deductible under section 212(2) as paid for the management, conservation, or maintenance of property held for the production of income.

In approaching the issue thus presented, it is helpful to consider the general purpose and history of section 212. Prior to 1942, legal expenses were deductible only if the suit occasioning them was directly connected with or proximately related to the taxpayer's trade or business. *Sarah Backer, et al., Executors*, 1 B.T.A. 214 (1924). Legal costs which were simply personal expenses were not deductible, although the line between personal and business expenses was sometimes difficult to draw. *Kornhauser* v. *United States*, 276 U.S. 145 (1928).

Certain investment activities conducted by the taxpayer might generate taxable income; however, the expenses attributable to these activities were not deductible where the activities did not constitute a trade or business. *Higgins* v. *Commissioner*, 312 U.S. 212 (1941). In order to equalize the treatment of these expenses with business expenses,[3] both of which produced taxable income, Congress added section 23(a)(2) to the 1939 Code by the Revenue Act of 1942 (56 Stat. 798, 819). That section provided as follows:

---

[2] SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

    (1) for the production or collection of income;

    (2) for the management, conservation, or maintenance of property held for the production of income; or

    (3) in connection with the determination, collection, or refund of any tax.

[3] H. Rept. No. 2333, 77th Cong., 2d Sess., p. 75 (1942), 1942-2 C.B. 372, 429.

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:
(a) EXPENSES.—

\*     \*     \*     \*     \*     \*     \*

(2) NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

At the same time that Congress enacted section 23(a)(2), it also added sections 22(k) and 23(u) to the 1939 Code. In general, those sections required a divorced spouse to include alimony payments in her gross income and permitted the paying spouse to deduct the amounts paid from his taxable income. Thus, while the Congress increased the range of deductions by section 23(a)(2), it also provided for a new kind of taxable income to a divorced spouse. However, Congress left us with no guidance in the legislative history as to the relationship between the alimony provisions and section 23(a)(2).

Section 23(a)(2) was construed as enlarging the category of incomes with respect to which expenses were deductible. Deductions under that section were analogous to business expenses and were allowable or not in accordance with principles which had long controlled these expenses. *McDonald* v. *Commissioner*, 323 U.S. 57 (1944). In particular, legal expenses were allowable as investment expenses subject to the same limitations imposed on legal fees incurred in a trade or business. *Trust of Bingham* v. *Commissioner*, 325 U.S. 365 (1945).

Great difficulty was experienced in distinguishing deductible legal expenses from those which were purely personal. This Court found that a wife could deduct legal fees incurred to obtain alimony included in her gross income under the Revenue Act of 1942. *Elsie B. Gale*, 13 T.C. 661 (1949), affd. 191 F. 2d 79 (C.A. 2, 1951), acq. 1952–1 C.B. 2; *Barbara B. LeMond*, 13 T.C. 670 (1949), acq. 1952–1 C.B. 3. On the other hand, the husband's legal expenses were regarded as personal even if he was compelled to pay his wife's counsel fees, or if his income-producing property was threatened with sequestration to pay alimony. *Lindsay C. Howard*, 16 T.C. 157 (1951), affd. 202 F. 2d 28 (C.A. 9, 1953); *Robert A. McKinney*, 16 T.C. 916 (1951); *Thorne Donnelley*, 16 T.C. 1196 (1951).

The Supreme Court in construing the new section found that Congress did not intend to permit taxpayers to deduct personal, living, or family expenses. *Lykes* v. *United States*, 343 U.S. 118, 125 (1952). In applying this rationale, the Court stated as follows:

\* \* \* Legal expenses do not become deductible merely because they are paid for services which relieve a taxpayer of liability. That argument would carry us too far. It would mean that the expense of defending almost any claim would be deductible by a taxpayer on the ground that such defense was made

to help him keep clear of liens whatever income-producing property he might have. * * * Section 23(a)(2) never has been so interpreted by us. It has been applied to expenses on the basis of their immediate purposes rather than upon the basis of the remote contributions they might make to the conservation of a taxpayer's income-producing assets by reducing his general liabilities. See *McDonald* v. *Commissioner, supra,* * * *

In 1963, the Court undertook to explain the application of this rationale to a husband's legal expenses incurred in a divorce action. *United States* v. *Gilmore,* 372 U.S. 39 (1963).

The taxpayer in *Gilmore* owned a controlling interest in three corporations. The dividends and salary from these companies were his major source of income. In a divorce proceeding, his wife alleged that much of this property was community property and that more than half of the community property should be awarded to her. The taxpayer incurred substantial legal expenses in the course of successfully resisting these claims. He sought to deduct the expenses attributable to his defense against his wife's property claims under section 23(a)(2) of the 1939 Code. The Supreme Court sustained the Government's contention that deductibility depended upon the origin and nature of the claim giving rise to the legal expenses, rather than upon the consequences of such a claim to income-producing property.[4]

The Supreme Court reached this result for two basic reasons. First, the language of the statute "conservation of property" was said to refer to operations performed with respect to the property itself rather than the taxpayer's retention of ownership in it. Secondly, the Court examined the legislative history and discerned a congressional purpose to equalize treatment of expenditures for profit-seeking activities with those related to a trade or business. In order to achieve this result, any limitation or restriction imposed upon a business expense must be applied to section 23(a)(2) expenses. Among those restrictions was the rule, now embodied in section 262, that personal, living, or family expenses are not deductible. The characterization of litigation costs as personal or business depends upon whether the claim involved in the litigation arises in connection with the profit-seeking activities. A suit against a taxpayer must be directly connected with or proximately result from his business before it is a business expense. This being so, the "origin of claim" test used in the business deduction cases was selected as most consistent with the meaning of section 23(a)(2). The claim against the property in a divorce suit arises only from the marital relationship and is therefore personal. The wife's rights, if any, must have their source in the marriage.

---

[4] The Commissioner's regulations have long provided that expenses do not become deductible merely because incurred in defense of a claim which may result in income-producing property being sold or used to satisfy taxpayer's liability. Sec. 39.23(a)₋15(k), Regs. 118; sec. 1.212-1(m), Income Tax Regs.

Dispelling all doubts that the Supreme Court was passing only on community property claims was *United States* v. *Patrick*, 372 U.S. 53 (1963), decided the same day as *Gilmore*. The *Patrick* case dealt with a property settlement which was made prior to divorce and which was supposed to have preserved the husband's income-producing property. The Supreme Court found little or no difference between that situation and *Gilmore* where the issue concerned community property and the wife's claim to an award of more than her existing share of such property.

*Gilmore* was decided under the 1939 Code and *Patrick* under the 1954 Code. There was no suggestion in these cases that enactment of the 1954 Code changed the meaning of the statutory language. The 1954 Code divides the provisions formerly contained in section 23(a)(2) of the 1939 Code into two paragraphs. The first deals with expenses for the production of income, and the second with expenses for the management, conservation, or maintenance of property held for the production of income. In connection with section 212 (1) and (2), the legislative history specifically states that no substantive change from section 23(a)(2) of the Internal Revenue Code of 1939 was made. Thus, the Code simply puts in separate paragraphs what was once one sentence.

Scarcely had the *Gilmore* case been decided, when the Tax Court was again confronted with the issue of the deductibility of the wife's attorney fees expended to collect defaulted alimony payments. *Jane U. Elliott*, 40 T.C. 304 (1963), acq. 1964–1 C.B. (Part 1) 4. In accordance with prior law, the wife was allowed a deduction under section 212(1). The Court held that the legal fees in question were incurred for the production of her taxable income. *Gilmore* and *Patrick* were not cited in this opinion.

The following year the case of *Ruth K. Wild*, 42 T.C. 706 (1964), was presented for review by the whole Court. The wife sought a deduction for counsel fees under section 212(1) in reliance upon the *Elliott* case for expenses incurred in negotiating an alimony agreement and in hearings concerning this agreement. The respondent contended that *Gilmore* and *Patrick* required a contrary result since the expenses were attributable to a claim which was based on her marital rights and not on a profit-seeking activity. This Court distinguished *Gilmore* and *Patrick* upon the basis that both of those cases were decided under paragraph (2) of section 212 and the contention in the *Wild* case was that the legal fees were deductible under paragraph (1). The Commissioner's regulations permitting a deduction for legal costs attributable to the collection of taxable alimony had not been changed following the *Gilmore* decision. Neither had his acquiescence in *Elliott* been withdrawn. These two factors influenced the Court in

holding that the wife could continue to deduct legal expenses related to alimony. Thus, she retained a deduction under section 212(1).

This Court has made it clear that the wife's deduction under section 212(1) is limited to expenses incurred in obtaining alimony includable in her gross income. There is no deduction for expenses related to property claims, even when incurred by the wife. Those claims grow out of the marital relationship and are covered by the rule in *Gilmore*. *Georgia Leary Neill*, 42 T.C. 793 (1964).

Turning to the case at hand, both petitioner and respondent have argued the case under section 212(2). In order to prevail, the petitioner must demonstrate how his expenses differ from those in *Gilmore* and *Patrick*. We find that he has failed in this task.

Petitioner suggests that his expenses differ from those at issue in *Gilmore* because his were caused by a separate suit to rescind a contract. In Joan Fleischman's second suit, she alleged that the provisions of the antenuptial agreement were disproportionate to her husband's means at the time the agreement was made and at the time of suit. Simultaneously, she had a divorce suit pending requesting support payments. Viewed in its entirety, her effort was one directed at obtaining support payments greater than those provided in the antenuptial agreement. In part, her claim to greater rights was founded upon facts existing or arising during the marriage. In this respect her claim was not unlike that involved in the *Gilmore* case. There, the claim was that certain community property belonging one-half to the husband should be awarded to the wife because of wrongs committed during the marital relationship. The Supreme Court rejected any distinction between legal expenses related to the issue of whether assets were community property and those related to an award of such property. Both issues have a common origin. In both *Gilmore* and here, the wife was requesting an award of property and her right was founded only upon the consequences that State law attaches to marriage. In petitioner's case, his wife made no claim to specific property except as a source of payment, hence his position is even weaker than that of the taxpayer in *Gilmore*.

The fact that Fleischman's wife first had to file a separate suit to invalidate the antenuptial agreement is solely the result of the restricted jurisdiction of the Ohio divorce courts. That fact alone is not a sound basis for a distinction in the field of Federal taxation.

For ascertaining the source of claims giving rise to legal expenses, the Supreme Court suggested a "but for" test. If the claim could not have existed but for the marriage relationship, the expense of defending it is a personal expense and not deductible. Applying that test, it is clear that but for her marriage to petitioner, the wife could have no claim to the property sought to be protected.

In deciding that the antenuptial agreement in this case is not significantly different from a property settlement incident to a divorce, we are aided in our reasoning by *United States* v. *Patrick*. In that case, complicated property adjustments were required so that the husband could retain controlling interest in a publishing business owned jointly with his wife. The legal fees involved were spent arranging a transfer of various stocks, leasing real property, and creating a trust, rather than conducting divorce litigation. The Supreme Court found no legal significance in these differences from *Gilmore*. The Court found that the transfers were incidental to the litigation which had its origin in taxpayer's personal life. It could be argued that we should take a narrow view and say that the suit to set aside petitioner's antenuptial agreement concerned contract rights. However, that view ignores the fact that marital rights were the subject of this contract and the fact that the second lawsuit was intimately bound up with the divorce litigation. In *Patrick*, the settlement agreement stated that it settled "rights growing out of the marital relationship." In the case at hand, the agreement states that the parties desire to agree to a distribution of property should their marriage be dissolved by divorce or annulment. We can perceive little or no difference between the two agreements when the question of deducting legal expenses is in issue.

A similar question was presented in *David G. Joyce*, 3 B.T.A. 393 (1926). The taxpayer there sought a deduction for legal expenses incurred in defending a postnuptial agreement from attack by his wife. The agreement was made in 1913 and governed rights upon death or divorce. In 1920 the wife instituted an action for divorce and for an award of maintenance in addition to the provisions of the postnuptial contract. The taxpayer sought to deduct the expenses related to defending the agreement as a business expense. He argued that the contract gave him greater freedom in managing his business property and that such property was the subject of the contract.

In holding that the expenses were personal, the Board stated that the husband's argument ignored the genesis of the rights he attempted to settle and limit by the postnuptial agreement. Those rights existed and would exist only by virtue of the marriage.[5]

In conclusion, we find no significant distinction between this case and the *Gilmore* and *Patrick* cases, and accordingly, we hold that the legal expenses incurred by the petitioner are not deductible.

*Decision will be entered for the respondent.*

---

[5] "It is hardly necessary to allude to the fact that marriage is a personal relationship, except for the purpose of pointing out that the legal rights and obligations annexed to the relationship are also personal and the expenses connected therewith would, we think, come within the classification of personal or family expenses." (*David G. Joyce*, 3 B.T.A. 393, 397.)