MELVIN L. SMITH and DIXIE K. CHILDS SMITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 13358-78.
United States Tax Court
T.C. Memo 1980-182; 1980 Tax Ct. Memo LEXIS 405; 40 T.C.M. (CCH) 395; T.C.M. (RIA) 80182; May 21, 1980, Filed Peter M. Wolverton and Edward Scheiderhelm, for the petitioners. Thomas Norman, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioners' Federal income tax for the years 1975 and 1976 in the respective amounts of $4,116.26 and $2,789.51. After concessions by petitioners the sole remaining issue is whether petitioners are entitled to ddductions for legal *406 expenses in the amount of $7,800 in 1975 and $7,000.19 in 1976. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Melvin L. Smith (hereinafter petitioner) and Dixie K. Childs Smith, husband and wife, were legal residents of Universal City, Texas, when they filed their petition. In March 1945 petitioner married Oleta Smith (hereinafter Oleta). Before their 1972 divorce they had one child, Meleta, in June 1957. Petitioner, now retired, served in the U.S. Air Force from 1943 until May 1, 1971. During his years of service he had many duty stations, including Waco, Texas, from 1954 to 1958. While stationed there petitioner and Oleta purchased a house in Waco which they rented after petitioner was transferred to another location. In November 1972 petitioner and Oleta were divorced in the State of Missouri. Oleta was awarded custody of the child, and petitioner was required to pay $50 per month in child support and monthly alimony of $450. In connection with the divorce they divided their household furniture and equipment, automobiles, personal belongings and other personal property. At this time there was also an oral agreement that petitioner *407 would make repairs to the house in Waco, that it would then be sold, and that they would divide the proceeds after deducting the cost of repairs. On May 24, 1973, Oleta filed suit in Texas asking for a partition of alleged community property acquired during the marriage which had not been divided in the Missouri divorce in 1972. Her petition specifically asked that the court partition a $10,000 insurance policy on petitioner's life, his Air Force retirement pay, and the proceeds from the sale of the Waco house. She also asked for $300 per month child support. While the suit was pending, in July 1974, petitioner and Oleta executed a contract providing the proceeds of the expected sale of the Waco house be placed in escrow subject to further agreement of the parties or court order. The suit was dismissed on September 18, 1974, for lack of jurisdiction. Petitioner filed a petition in Missouri court on May 15, 1974, asking that his alimony obligation be cancelled.In response, on September 5, 1974, Oleta requested the court to increase the child support payments. Oleta also filed suit again in Texas on November 22, 1974, asking for partition of the same property and for the same *408 increased child support as in the earlier Texas suit. This second Texas lawsuit was based in part on the contracts regarding the sale of the Waco house. In December 1975 petitioner and Oleta agreed to a settlement of the Missouri court action. In this settlement petitioner agreed to pay Oleta $350 a month so long as she remained unmarried and to pay increased child support as necessary for the child's education. He also assigned his $10,000 life insurance policy to Oleta and agreed to continue paying the premiums. Oleta retained all proceeds from the sale of the house in Waco, while petitioner was permitted to keep his Air Force retirement pay and to claim the child as a dependent on his income tax returns. Because of this settlement, the suit in Texas court was dismissed on February 11, 1976. Petitioner retained legal counsel to represent him in the Missouri and Texas cases. In this connection he paid the following legal expenses: 1975
1976
Texas counsel
$6,900.00
$2,300.00
Missouri counsel
900.00
4,575.52
Miscellaneous costs
124.67
$7,800.00
$7,000.19
Petitioners deducted these respective amounts on their 1975 and 1976 joint returns. *409 Respondent disallowed these deductions. OPINION The sole issue in this case is whether petitioners are entitled to legal expense deductions. Petitioners contend that the legal expenses at issue are deductible under section 212 [1] as expenses incurred for the production of collection of income or for the management, conservation, or maintenance of property held for the production of income. They assert that the first Texas lawsuit was a suit to obtain title to property and to obtain income from property held for income production. The second Texas suit, petitioners contend, involved contracts concerning income-producing property. They argue that the Missouri litigation involved modification of alimony payments deductible to petitioners. Petitioners also assert that they are entitled to capitalize those legal expenses which are not currently deductible and add them to the bases of the assets involved in the lawsuits. [2]
*410 Respondent contends that under the "origin of the claim" test set forth in United States v. Gilmore,372 U.S. 39 (1963), the expenses are nondeductible personal expenditures under section 262. For reasons below we agree that petitioners are not entitled to the deductions they seek. At issue in Gilmore was the deductibility of that part of a husband's legal expense incurred in divorce proceedings which was attributable to his successful resistence of his wife's claims to his controlling stock interests in three corporations, each of which was a franchised automobile dealer. She also asserted that earnings accumulated by the three corporations were community property and that under California law she was entitled to more than a one-half interest in such property. After drawing a distinction between deductible expenses paid in carrying on a trade or business or paid for the production of income and nondeductible personal expenditures, the Supreme Court wrote: [The] characterization, as "business" or "personal," of the litigation costs of resisting a claim depends on whether or not the claim arises in connection with the taxpayer's profit-seeking activities. *411 It does not depend on the consequences that might result to a taxpayer's income-producing property from a failure to defeat the claim * * *. [United States v. Gilmore,372 U.S. at 48.] The Court concluded that the wife's claims "stemmed entirely from the marital relationship," not from income-producing activity: This is obviously so as regards the claim to more than an equal division of any community property found to exist. For any such right depended entirely on the wife's making good her charges of marital infidelity on the part of the husband. The same conclusion is no less true respecting the claim relating to the existence of community property. For no such property could have existed but for the marriage relationship. [United States v. Gilmore,supra, at 51-52.] [Footnote omitted.] In a similar case, United States v. Patrick,372 U.S. 53 (1963), the Supreme Court also applied the "origin of the claim" test. Patrick involved the deductibility of certain legal fees paid by the taxpayer-husband to his attorneys and attorneys representing his wife in connection with divorce proceedings instituted by *412 the wife. A specified portion of these fees was for the arrangement of a stock transfer, the leasing of property, and the creation of a trust to permit the husband to maintain control of the corporate business. The Court concluded, as in Gilmore, that the wife's claims arose from the marital relationship, not profit-seeking activity, and that the attorneys' fees were therefore nondeductible: We find no significant distinction in the fact that the legal fees for which deduction is claimed were paid for arranging a transfer of stock interests, leasing real property, and creating a trust rather than for conducting litigation. These matters were incidental to litigation brought by respondent's wife, whose claims arising from respondent's personal and family life were the origin o the property arrangements. The property settlement agreement itself recited that it settled rights "growing out of the marital relationship," supra, p. 55, and both courts below found that, although nominally an agreement for the purchase of the wife's property, it served ultimately to protect respondent's income-producing property from an assertion of his wife's latent marital rights. It would *413 be unsound to make deductibility trun on the nature of the measures taken to forestall a claim rather than the source of the claim itself. [United States v. Patrick,372 U.S. at 57.] After consideration of the facts in the instant case, we cannot agree with petitioners that Oleta's claims in the first Texas suit had no origin in her marriage to petitioner. It is obvious that Oleta's claim for increased child support arose from their family and personal life. Furthermore, any interest she might have had in the property she sought to have partitioned would have been acquired during and because of the marriage. Petitioners' contention that Oleta filed suit merely to partition property acquired for income-production is not supported by the record. [3]
*414 Petitioners assert that Oleta's claims in the second Texas suit arose not from her marriage to petitioner, but from the oral contract after the divorce and from the written one of July 1974. However, these contracts were merely attempts to settle the parties' claims to marital property and were not significantly different from a property settlement incident to a divorce. See Fleischman v. Commissioner,45 T.C. 439, 446-447 (1966).The fact that both contracts were entered into after the divorce is of no consequence. Nor does it matter that the Texas lawsuits were filed so long after the divorce. The nature of the claims asserted by Oleta were not changed by the passage of time. When the "but for" test suggested by the Supreme Court in Gilmore is applied, (see Fleischman v. Commissioner,supra) it is clear that but for Oleta's marriage to petitioner, she would have had no basis for the claims made in the two Texas lawsuits. Accordingly, we conclude that legal expenses incurred in connection with the Texas suits are not deductible. The general rule which we have applied to the attorneys' fees in the Texas suits applies equally to legal *415 expenses connected with the property settlement and child support issues of the Missouri litigation. Petitioners contend, however, that an exception to the "origin of the claim" rule is applicable to legal expenses attributable to modification of alimony payments. Where a wife pays attorneys' fees for collection or production of alimony includible in her gross income under section 71, those fees are deductible to the wife under section 212. Wild v. Commissioner,42 T.C. 706 (1964); section 1.262-1(b) (7), Income Tax Regs. See also section 1.212-1(d), Income Tax Regs. However, we need not decide whether this exception applies to petitioner's situation, [4] since petitioners have failed to prove what portion, if any, of the legal expenses paid was allocable to the alimony issue. Mirsky v. Commissioner,56 T.C. 664, 677 (1971). Petitioners have the burden of proving that they are entitled to the deductions they seek. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
*416 Petitioners have shown the amounts of legal expenses paid to two law firms in the years 1975 and 1976, and they contend that all of the fees paid to the Missouri counsel are allocable to the alimony issue. However, this is obviously not the case. First, in addition to alimony, Oleta's claim for increased child support was also at issue in the Missouri suit. Moreover, Oleta's property claims in the Texas lawsuits were included in the settlement of the Missorui action. In the light of these facts, we simply cannot conclude that all $5,475.52 of the fees paid Missouri counsel were attributable solely to litigation concerning alimony. Petitioners propose no other allocation of any portion of these fees to the alimony issue, and indeed they do not ask the Court to make such an allocation. In any event the record provides no basis on which we could attribute any ascertainable part of the expenses over two years to the alimony issue. We hold that petitioners are not entitled to the legal expense deductions at issue. In accordance with the foregoing, Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect in the years in issue. ↩
2. Respondent does not dispute this legal principle. However, the basis adjustments which petitioners want us to make would have no effect on the amlunts of tax at issue for 1975 and 1976. Accordingly, this is an issue we need not decide.↩
3. Petitioners argue that because of the Missouri residence of petitioner and Oleta, the property at issue in the Texas suit could not have been community property and that as a result Oleta's claim could not have arisen from the marital relationship. However, petitioners have proposed a factual finding that Oleta alleged that the house, insurance policy and retirement pay were community assets. Whether or not Oleta would have prevailed on her claims, the mere allegation that the assets were community property is sufficient to indicate that the claim arose from the marriage relationship.↩
4. See Hunter v. United States,219 F.2d 69 (2d Cir. 1955); Sunderland v. Commissioner,T.C. Memo. 1977-116↩.