DONA E. CONWAY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Conway v. Commissioner
Docket No. 18244-93
United States Tax Court
T.C. Memo 1994-405; 1994 Tax Ct. Memo LEXIS 410; 68 T.C.M. (CCH) 469; 94-2 U.S. Tax Cas. (CCH) P47,967; August 18, 1994, Filed *410 Decision will be entered under Rule 155. Dona E. Conway, pro se. For respondent: Blaine E. Holiday. DINAN
DINAN
MEMORANDUM OPINION DINAN, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined a deficiency in petitioner's Federal income tax and an accuracy-related penalty under section 6662(a) for the year 1990 in the amounts of $ 6,930 and $ 1,386, respectively. Concessions having been made by respondent, the issues for decision are: (1) Whether petitioner underreported her taxable income for 1990; (2) whether petitioner is entitled to a deduction for legal expenses in the amount of $ 2,501; and (3) whether petitioner is liable for the section 6662(a) accuracy-related penalty due to negligence. Specifically, the first issue *411 is whether dividend income of $ 562 from AMEV Money Fund (AMEV), interest income of $ 5,000 from Western Life Insurance Company (Western Life), and a $ 2,848 distribution from an IRA held with Tanberks, Inc. (Tanberks), received by petitioner in 1990, were taxable to her. Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated by this reference. Petitioner resided in the State of Minnesota on the date the petition was filed in this case. Petitioner obtained a divorce from her spouse by the Family Court Division of the State of Minnesota (the Family Court) in 1986. The 1986 Judgment and Decree was later amended by the parties, and a Second Judgment and Decree was entered by the Family Court in 1989. In 1988, petitioner received a lump-sum property settlement of approximately $ 450,000. The lump-sum property settlement and amended decree did not end the controversy. In 1991, the Second Judgment and Decree was amended and a Third Judgment and Decree was entered by the Family Court. The Third Judgment and Decree does not include a provision for alimony for petitioner. The first and second decrees were not introduced *412 into evidence. During 1990, petitioner received dividend income of $ 562 from AMEV, interest income of $ 12,815 from Western Life, and a $ 2,848 IRA distribution from Tanberks. Petitioner does not deny receiving any of the income in question. On November 20, 1990, Western Life issued petitioner a check for $ 21,209. Later, Western Life issued petitioner a Form 1099-INT indicating that $ 12,815 of the $ 21,209 paid was interest income. Tanberks issued to petitioner a Form 1099-R indicating that the $ 2,848 was a distribution. All payments were made to petitioner personally. Petitioner had her 1990 Federal income tax return prepared by a certified public accountant by the name of William H. Otis. Petitioner relied totally on Mr. Otis' judgment and abilities with respect to preparing her Federal income tax return, as she did not feel qualified to file her own tax return. Petitioner provided Mr. Otis with all relevant records pertaining to her income tax liability for 1990 including Forms 1099 from AMEV, Western Life, and Tanberks. On petitioner's 1990 Federal income tax return, Mr. Otis omitted the income from AMEV and the distribution from Tanberks, and only reported $ 7,815 *413 of the $ 12,815 in interest income from Western Life. Mr. Otis stated that the reason he did not report the payments from AMEV or Tanberks as income to petitioner was because he determined that, despite the Forms 1099, the money was income to a trust, of which petitioner was trustee. Mr. Otis did not elaborate further. Mr. Otis stated that the reason he did not report the additional $ 5,000 in interest income from Western Life was because he determined that, contrary to the Form 1099-INT issued by Western Life, the $ 5,000 was nontaxable. Mr. Otis did not elaborate further. Mr. Otis also claimed a $ 3,260 deduction for legal fees on petitioner's Federal income tax return. Mr. Otis stated that the reason he claimed the deduction for legal fees was, "I believe they [legal fees were part of the conservation preservation of the income producing properties that she subsequently got." Mr. Otis did not elaborate further. At trial, petitioner introduced into evidence only a portion of her legal bills for 1990. The bills provided by petitioner evidence payment of less than $ 900 in legal fees during 1990. None of the bills included a detailed description of the legal work done, nor *414 did the bills even identify the attorney or firm that did the work. The only description of the legal work done was a notation on each bill stating "Re: Dissolution". The first issue for decision is whether petitioner failed to report income during 1990. Section 61(a) provides that "gross income means income from whatever source derived". Gross income includes, but is not limited to, interest, dividends, alimony and separate maintenance payments, annuities, income from life insurance and endowment contracts, and pensions. Sec. 61(a). The taxpayer bears the burden of proving that respondent's determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). We find that petitioner failed to report income in 1990 in the amount of $ 8,410. Petitioner admitted to doing so, albeit based on the advice of Mr. Otis. We find that Mr. Otis' various explanations for not reporting income, which petitioner admitted to receiving, were unsatisfactory, unconvincing, and unsubstantiated. The second issue for decision is whether petitioner is entitled to an additional $ 2,501 deduction for legal expenses. Respondent conceded that petitioner *415 is entitled to deduct $ 760 of the $ 3,260 claimed as legal expenses. [2] Petitioner relies almost entirely on Mr. Otis' testimony to support her claim of entitlement to the entire $ 3,260 deduction. Petitioner's reliance on Mr. Otis is sorely misplaced. Section 212 provides, that in the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year (1) for the production or collection of income, and (2) for the management, conservation, or maintenance of property held for the production of income. Section 262(a) provides that no deduction shall be allowed for personal, living, or family expenses. Generally, attorney's fees and other costs paid in connection with a divorce, separation, or decree for support are nondeductible by either the husband or the wife. Sec. 1.262-1(b)(7), Income Tax Regs. Such expenses incurred in connection with a divorce property *416 settlement are nondeductible because such expenses are derived from the marital relationship, rather than the spouse's activities in holding such income-producing property. United States v. Patrick, 372 U.S. 53, 57 (1963); United States v. Gilmore, 372 U.S. 39, 51 (1963); Fleischman v. Commissioner, 45 T.C. 439, 446 (1966); Sunderland v. Commissioner, T.C. Memo. 1977-116. However, legal fees and other professional costs paid or incurred by the taxpayer to secure the right to alimony are deductible as long as the alimony is taxable to the recipient. Hesse v. Commissioner, 60 T.C. 685, 693-694 (1973), affd. without published opinion, 511 F.2d 1393 (3d Cir. 1975); Wild v. Commissioner, 42 T.C. 706, 710 (1964); Sec. 1.262-1(b)(7), Income Tax Regs.
Based on the limited record before us, we sustain respondent's determination. Petitioner's legal expenses are personal nondeductible expenses under section 262. There is no credible evidence to the contrary. The only indication *417 as to the nature of petitioner's legal bills is a notation on each bill that states "Re: Dissolution". Legal expenses incurred as a result of a dissolution of marriage are personal expenses of the taxpayer and are not deductible under section 212. Sec. 1.262-1(b)(7), Income Tax Regs.
The third issue for decision is whether petitioner is liable for the section 6662(a) accuracy-related penalty. Section 6662(a) imposes a 20-percent penalty on the portion of the underpayment attributable to any one of various factors, one of which is negligence. Respondent determined that petitioner is liable for the accuracy-related penalty imposed by section 6662(a), and that the entire underpayment of tax was to due to negligence. "Negligence" includes a failure to make a reasonable attempt to comply with the provisions of the Internal Revenue laws or to exercise ordinary and reasonable care in the preparation of a tax return. Sec. 6662(c); Sec. 1.6662-3(b)(1), Income Tax Regs. "Disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c); Sec. 1.6662-3(b)(2), Income Tax Regs.
However, section 6664(c)(1) provides that the penalty under section *418 6662(a) shall not apply to any portion of an underpayment, if it is shown that there was reasonable cause for the taxpayer's position with respect to that portion and that the taxpayer acted in good faith with respect to that portion. Sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith within the meaning of section 6664(c)(1) is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess her proper tax liability for the year. Id. Reliance by the taxpayer on the advice of a qualified adviser will constitute reasonable cause and good faith, if, under all of the facts and circumstances, the reliance by the taxpayer was reasonable and the taxpayer acted in good faith. Id. Based on the record, we conclude that petitioner is not liable for the section 6662 accuracy-related penalty. Following her divorce, petitioner retained a certified public accountant, Mr. Otis, to determine her income tax liability. Petitioner retained Mr. Otis because she did not believe she was able to correctly *419 file her own return, and, more importantly, she believed Mr. Otis was a professional tax preparer who could correctly determine her tax liability. Petitioner provided Mr. Otis with all the information necessary for him to accurately determine her tax liability. Petitioner had no reason to doubt Mr. Otis' determinations with respect to her tax liability for 1990. Although we have found that petitioner's reliance on Mr. Otis was misplaced and unfortunate, in light of the circumstances, we do not conclude that petitioner's reliance on Mr. Otis was unreasonable. Based on the foregoing, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The record contains no explanation for respondent's concession on this issue.↩