T.C. Memo. 2018-203

UNITED STATES TAX COURT

MARY LOUISE SHOLES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7917-15L.                    Filed December 17, 2018.

Mary Louise Sholes, pro se.

<u>Zachary B. Friedman</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  This case was commenced under section 6330(d) in

response to a notice of determination sustaining a notice of Federal tax lien filing

with respect to petitioner's Federal income tax liabilities for 2007, 2008, 2009, and

2010.  The notice acknowledged that petitioner's liabilities were in currently-not-

collectible status.  Respondent agreed to de novo review of petitioner's tax

[*2] liabilities for 2007, 2008, and 2009 because, although notices of deficiency for those years were sent to her last known address, petitioner did not receive them in time to file petitions with the Court. See sec. 6330(c)(2)(B). All section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent has conceded that petitioner is not liable for the section 6662 penalties that were assessed for 2007, 2008, and 2009, and petitioner has conceded excess withholding credits claimed on her return for 2010. The primary issue remaining is the deductibility of legal and professional fees paid by petitioner and her deceased husband Russell Sholes (R. Sholes) on behalf of themselves and their son, Bruce A. Sholes (B. Sholes).

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Arizona when she timely filed her petition.

For some time before and during the years in issue, petitioner and R. Sholes maintained a residence in Michigan and frequently traveled to Arizona. During the years in issue, petitioner owned residential property in Tucson, Arizona. The persons residing at that property during those years were petitioner and R. Sholes,

[*3] and their son B. Sholes.  B. Sholes did not pay rent with respect to the Tucson property during the time that he resided there.

Petitioner also owned residential property in Phoenix, Arizona (collectively with the Tucson residential property, Arizona residences) during 2007, 2008, and 2009.  The persons residing at that property during those years were petitioner, R. Sholes, and B. Sholes.  B. Sholes did not pay rent with respect to the Phoenix property during the time he resided there.  During part of the time he resided in the Arizona residences, B. Sholes was practicing law.

The Arizona residences became the subject of litigation between petitioner, R. Sholes and B. Sholes, and B. Sholes' former wife, Judy Fernando.  One subject of the litigation was the divorce of B. Sholes and Fernando.  Other litigation involved an entity known as Oasis at Wild Horse Ranch (Oasis).  In the divorce action, Fernando filed a motion leading to the addition of petitioner and R. Sholes as defendants to claims by Fernando of community property interests in the Arizona residences and in Oasis.  Fernando alleged, among other things, that B. Sholes had caused title to those properties to be in the names of his parents to defraud Fernando of her community interest in the properties.  In 2010, 50% of Oasis was awarded to Fernando and 50% was awarded to B. Sholes' parents, as a result of moneys his parents had invested in Oasis at his suggestion or on his

[*4] behalf. In 2011 or 2012, the Tucson property was awarded to Fernando in the divorce case.

Petitioner and R. Sholes filed joint Federal income tax returns for 2007, 2008, and 2009. On Schedule E, Supplemental Income and Loss, of each return they claimed rental expense deductions that were disallowed in the notices of deficiency as follows:

| Item | 2007 | 2008 | 2009 |
|------|------|------|------|
| Legal and other professional fees | $390,939 | $580,267 | $301,408 |
| Mortgage interest | 90,629 | 96,957 | 50,732 |
| Travel | --- | --- | 3,209 |
| Office | --- | --- | 6,074 |
| Taxes | --- | --- | 12,430 |
| Depreciation | --- | --- | 10,908 |

They did not report any rental income from the Tucson or Phoenix properties during those years.

The legal and professional fees deducted on petitioner's Schedules E included fees paid in the course of criminal investigations involving petitioner and B. Sholes, B. Sholes' divorce proceedings, and litigation over Oasis. When asked

**[*5]** to substantiate the legal expenses paid, petitioner prepared and submitted to respondent a summary of checks payable to law firms; numerous checks to caregivers for B. Sholes' children; a check dated July 14, 2007, for $10,000 payable to Bruce Sholes; a check dated November 30, 2007, for $53,000 payable to petitioner; and a check dated December 13, 2007, for $40,000 payable to cash. Despite repeated requests and Court orders during discovery and in preparation for trial, petitioner did not produce any invoices from lawyers or other documents that explained the nature of the services performed. No invoices produced contained a description of the services that would allow allocation between personal items of B. Sholes and deductible expenses of petitioner. (After trial, petitioner and B. Sholes sent some invoices for legal services to respondent's counsel, none of which were provided to the Court. They acknowledged that some of the invoices were addressed to B. Sholes and related to his divorce proceedings.)

The 2009 joint return of petitioner and R. Sholes was due April 15, 2010, but was filed on October 15, 2010, without an extension of time for filing. Because of the late filing, the IRS assessed an addition to tax under section 6651(a)(1). Failure to pay additions to tax under section 6651(a)(2) and (3) were also assessed for 2007, 2008, and 2009.

**[*6]**                                   OPINION

Petitioner bears the burden of proof of the deductions in dispute in this case. See Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Rockwell v. Commissioner, 512 F.2d 882, 886 (9th Cir. 1975), aff'g T.C. Memo. 1972-133. Petitioner has not satisfied the conditions under which the burden of proof would shift to respondent. See generally sec. 7491(a).

Respondent has the burden of production under section 7491(c) for the additions to tax. Respondent presented evidence, justifying the additions to tax assessed under section 6651(a). Petitioner has presented neither evidence nor argument that her late filing and late payments were due to reasonable cause and not due to willful neglect. The additions to tax will be sustained.

By agreement with respondent's counsel and permission of the Court because of petitioner's infirmities, petitioner's case was presented primarily through the testimony and arguments of her son, B. Sholes, a former lawyer. They did not present testimony concerning expenses other than legal expenses. They specifically failed to substantiate expenses subject to the heightened requirements of section 274(d), and they failed to show that disallowed mortgage interest deductions satisfied the requirements and limitations of section 163(a) and (h). Petitioner's posttrial brief refers to lost records as the reason for failure to

**[\*7]** substantiate other items and states that "[t]here is really only one issue of significance here, whether professional fees are deductible." All other issues, therefore, are either deemed abandoned or decided against petitioner because of failure of proof. See Rule 149(b). In any event, the posttrial arguments are not evidence and cannot be considered. See Rule 143(c).

During rambling trial testimony, B. Sholes described financial difficulties he encountered in investments in Oasis with Fernando and her parents; how his parents helped him financially by purchasing his residences and allowing him to live there; how his parents incurred costs of litigation in which he was involved; and how adverse results of the litigation precluded his repaying his parents. He testified that the rental arrangement with his parents started in approximately May 2004, that he was winding down his law practice and, with Fernando, was trying to make money out of investments in Oasis. In 2010, 50% of Oasis was awarded to Fernando and 50% was awarded to his parents, as a result of moneys his parents had invested in Oasis at his suggestion or on his behalf.

Petitioner and B. Sholes have claimed from time to time that Fernando and her friends and family used political connections to cause a criminal investigation for money laundering to be commenced against them. Some of the legal expenses were incurred in relation to that investigation, in which the same lawyers

**[*8]** represented all three Sholeses.  Other fees were incurred in B. Sholes' divorce proceeding, and some were incurred in separate litigation over rights in Oasis.  So far as the record reveals, all of the litigation arose from B. Sholes' disputes with Fernando.

Notwithstanding multiple opportunities to provide specific descriptions of the services rendered by various lawyers and firms involved in the various legal battles, petitioner and B. Sholes failed to do so.  Instead, to support their contentions that all of the amounts were properly deducted, they have relied on canceled checks, summaries of those checks, and vague explanations of what particular lawyers did.  The inclusion of payments to caregivers for B. Sholes' children, by checks clearly marked as for child care, undermines the reliability of their generalizations.  Petitioner belatedly offered to concede those clearly personal amounts, but that concession does not cure the misrepresentation of the nature of the payments in the summary of legal and professional fees petitioner prepared to support the deductions claimed on her tax returns.

Petitioner originally reported the legal and professional fees in question as rental expenses on Schedules E of the returns she filed with R. Sholes.  The fiction that the Arizona residences were rental properties was belied by the evidence that they were occupied by B. Sholes, and occasionally by petitioner and R. Sholes,

**[\*9]** and not rented during the years in issue. Although B. Sholes testified that he executed a promissory note to pay the rent when he was able to do so, there is no evidence of the agreed amount of rent or other terms. There is no evidence of the actual amount of time spent at the Arizona residences by petitioner and R. Sholes. Deductions related to occupancy of the Arizona residences by petitioner and her family members are disallowed by section 280A(a). See sec. 280A(a), (d).

> Petitioner claims that, according to her accountant:
>
> Michigan had an unusual law that only allowed a ceiling of $100,000.00 per year in legal fees unless they related to rental or business property. Thus, Petitioner was forced to treat the two Arizona residences as rental properties, according to the CPA. Since they were in fact bought to be rented out, petitioner gave her approval. Since that time two Federal Courts ruled petitioner to be an Arizona resident, so the maintaining of the rental property category on the tax returns was no longer necessary.

That claim is neither corroborated nor relevant but indicates petitioner's lack of veracity in the entries on her returns.

> Petitioner's latest claim, in her posttrial brief, is that the legal expenses are deductible as "paid or incurred for the production of income or the management, conservation, or maintenance of income-producing property" under section 212. She asserts:
>
> Petitioner had to invest the legal fees to conserve Oasis as she knew it. Otherwise her investment and that of her son, which together

**[\*10]** constituted 100% of the money which bought the Wildhorse Ranch, renovated it, bought all the appliances, kitchen equipment, dishes and all other equipment would have been lost. The payment of the legal and professional fees and costs was necessary to conserve both the Oasis, LLC and her investment and ownership of it.

Petitioner's posttrial brief also asserts many facts that are not in the evidentiary record and cannot be considered. See Rules 143(b) and (c), 151(e)(3). Petitioner's factual assertions, however, suggest that corroborating witnesses and documents should have been available if her claims were accurate. Petitioner contends that all of the fees deducted related to protecting her interest in Oasis, even those paid in relation to her son's divorce and in defending a criminal investigation that involved her for a short time and B. Sholes for years. This contention is simply unsupported, implausible, and not credible.

Taxpayers are required to maintain sufficient records to establish the amount and purpose of any deduction. Sec. 6001; Higbee v. Commissioner, 116 T.C. 438, 440 (2001); Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), (e), Income Tax Regs. We are not required to accept B. Sholes' testimony in the absence of corroborating evidence that should have been available. See Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), aff'g T.C. Memo. 1969-159; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). After multiple unsuccessful attempts to

[*11] secure the actual invoices before and even after trial, we may infer that they would not support petitioner's claims.  See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), aff'd, 162 F.2d 513 (10th Cir. 1947).  It is worth repeating that the canceled checks and summaries petitioner relied on included numerous checks for child care services as well as unexplained checks totaling over $100,000 written in 2007 and payable to B. Sholes ($10,000), petitioner ($53,000), and cash ($40,000).  Petitioner's evidence is simply unreliable and does not support any deductions.

Without evidence of the specific services performed for petitioner by lawyers and law firms, it is not possible to separate out fees that are paid for petitioner's son or otherwise for personal, living, or family expenses not deductible because of section 262.  Deductibility of legal fees depends on the origin and character of the claim and not on its potential consequences to the taxpayer.  United States v. Gilmore, 372 U.S. 39, 49-52 (1963).  If the origin of the claim is a marital relationship, the legal expenses are nondeductible even if the outcome affects income-producing property of the taxpayer.  Fleischman v. Commissioner, 45 T.C. 439, 446 (1966); Lucas v. Commissioner, T.C. Memo. 2018-80; Barry v. Commissioner, T.C. Memo. 2017-237.

**[*12]** Petitioner and R. Sholes became parties to the divorce proceeding between B. Sholes and Fernando.  The pleadings in evidence relating to that case suggest that the origin of the claim was Fernando's assertion that the Arizona residences and Oasis had been placed in the name of B. Sholes' parents in an effort to deprive Fernando of her community interest in the properties.  Even if we concluded that some of the fees petitioner paid might be deductible under section 212, we would be unable to estimate the deductible amount under the principles of Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), because we have no reliable evidence on which we could base an estimate.  See Norgaard v. Commissioner, 939 F.2d 874, 879 (9th Cir. 1991), aff'g in part, rev'g in part T.C. Memo. 1989-390; Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Petitioner's evidence is simply too unreliable and her arguments are too unpersuasive for any disputed deductions to be allowed.  Petitioner has presented no reason why the notice of determination upholding the lien filing while petitioner's liabilities remain in currently-not-collectible status should not be

**[*13]** sustained.  We have considered the other arguments of the parties, but they are unsupported or contradicted by the record or are irrelevant to the issues before us.

Decision will be entered for

respondent.